PUBLIC UTILITY COMMISSION OF TEXAS, et al., Appellants,

v.

CITY OF SHERMAN, Texas, et al., Appellees.

No. 13453.

Court of Appeals of Texas, Austin.

Dec. 23, 1981.

Rehearing Denied April 28, 1982.

Mark White, Atty. Gen., Leon J. Barish, Asst. Atty. Gen., Austin, for Public Utility Commission of Texas.

John W. Ellis, Jr., Brown, Hill, Ellis & Brown, Sherman, for Luella Water Supply Corp.

Gregory D. Humbach, City Atty., Sherman and Mr. Skip Newsom, Booth, Lloyd & Simmons, Austin, for City of Sherman, Texas and The Greater Texoma Municipal Utility Dist.

POWERS, Justice.

Luella Water Supply Corporation (Luella) is a public utility. It is regulated by the Public Utility Commission of Texas and operates under a certificate of public convenience and necessity issued by that agency. The corporation furnishes water to the City of Luella, Texas, under a "franchise agreement" with that municipality. The City of Sherman, Texas, operates its own municipal water system. Luella complained to the Commission that the City of Sherman had embarked upon a plan to produce, for its own use, water contained in the same underground "sands" or strata as those from which Luella draws water. Luella admits that the City of Sherman does not intend to sell water to customers within the area assigned to Luella under its certificate. The City of Sherman plans instead to transport the water for use in its own water system. Nevertheless, Luella complains, the action of the City of Sherman in drawing water from the common source of supply will deplete that supply and thus interfere with the operation of Luella's water supply system in violation of Tex.Rev.Civ. Stat.Ann. art. 1446c, § 60 (Vernon 1980), the Public Utility Regulatory Act (PURA). Section 60 provides as follows:

> If a *public utility* in constructing or extending its lines, plant, or system *interferes or attempts to* interfere *with* the operation of a line, plant, or *system of any other public* utility, the commission may issue an order prohibiting the construction or extension or prescribing terms and conditions for locating the lines, plants, or systems affected. PURA § 60 (emphasis added).

After a hearing on Luella's complaint, the Commission's examiner concluded the Commission possessed no subject-matter jurisdiction to determine the issues raised by the complaint, saying:

> Section 60 of the PURA does not empower the Commission to regulate the production of groundwater by one utility even when that production would have an adverse effect on the water supply available to another public utility, since the Commission would thereby be directly adjudicating competing property rights to underground water.

Accordingly, the examiner recommended dismissal of Luella's complaint. Disagreeing with the examiner, the Commission entered the following order:

> The Commission ... hereby REMANDS the case for an evidentiary hearing on the questions of (1) whether the City's [City of Sherman] actions will interfere with the Complainant's utility operations in such a manner and to such an extent that the Complainant's ability to render continuous and adequate utility service to customers in its service area, as required by Section 58(a) of the Public Utility Regulatory Act, Tex.Rev.Civ.Stat.Ann. art. 1446c (Supp.1979), will be impaired; and (2) if so, whether an order prohibiting such interference should be issued by

this Commission pursuant to Section 60 of said act.

The City of Sherman immediately sought declaratory and injunctive relief in the district court, contending the Commission lacked jurisdiction to enter the order in question. The district court agreed and entered its judgment restraining the Commission from proceeding further with respect to Luella's complaint. The district court held as follows: (1) the Commission lacks jurisdiction over municipalities under PURA for the reason that municipalities, such as the City of Sherman, are not included within the term "public utility" as that term is employed in the applicable parts of the statute;[1] (2) the Commission lacks jurisdiction to prohibit, condition or control the water development activities of municipally-owned water utilities under section 58(a) of PURA or any other provision of that statute;[2] and (3) the Commission lacks statutory authority to prohibit or otherwise directly regulate the production of groundwater, including the power to adjudicate correlative rights to groundwater. From this judgment Luella appealed to this Court.

This appeal presents a conflict between a privately-owned public utility (Luella) and a municipally-owned utility (City of Sher-

---

1. Implicit in the district court's ruling is the exclusionary definition contained in PURA § 3(c), which provides:

   > The term "public utility" or "utility," when used in this Act, includes any person, corporation, river authority, cooperative corporation, or any combination thereof, *other than a municipal corporation* or a water supply or sewer service corporation, or their lessees, trustees, and receivers, now or hereafter owning or operating for compensation in this state equipment or facilities for: "... the transmitting, storing, distributing, selling, or furnishing of potable water to the public for any use ... other than equipment or facilities owned and operated for (that) purpose by a city, town or other political subdivision of this state...." (emphasis added).

   PURA § 49 sets forth two related definitions for the purposes of article VII of PURA dealing with certificates of convenience and necessity. Under that section, a municipality is included in the definition of "retail public utility," that is, an entity which provides a retail utility service. On the other hand, PURA § 49 continues

   to exclude municipalities from the definition of "public utility" but includes therein water supply corporations. Therefore, for the purposes of PURA §§ 49–62, Luella is facially included within the definition of "public utility" while the City of Sherman is facially excluded; and both are literally included in the definition of "retail public utility." PURA §§ 58 and 60, discussed in the opinion, are included within article VII of the Act.

2. Section 58(a) of PURA directs that "[t]he holder of any certificate of public convenience and necessity shall serve every consumer within its certified area and *shall render continuous and adequate service within the area or areas*." (emphasis added). Luella is the holder of a certificate of convenience and necessity, as indicated above, and contends that its ability to perform the duty imposed by PURA § 58(a) may be impaired for want of water if the City of Sherman drains the common "sands" or strata.

man). It is obvious that PURA makes a general division between utilities that are municipally-owned and those which are not. For example, a municipality may be the initial rate-setting and regulatory body with respect to intra-city utilities which are privately owned. PURA article IV. While a municipality may not issue certificates of convenience and necessity under the Act, its jurisdiction within municipal limits, in the ordinary case, is said to be both "exclusive" and "original." PURA § 17(a). This grant of regulatory authority to municipalities is expressly made subject to limitations imposed elsewhere in PURA. *Id.* With respect to utility "operations" and "services" *outside* municipal limits, the jurisdiction of the Commission is said to be "original" and "exclusive," with no distinction being made as to privately and municipally-owned utility operations or services. PURA § 17(e). Nevertheless, the City of Sherman contends it is not subject to Commission regulatory power because of its status as a municipally-owned utility, even with respect to its extra-territorial utility operations.

■ We note, however, that a municipally-owned utility rendering a *retail utility service* outside its municipal limits and in competition with another retail public utility may do so only under a certificate of convenience issued by the Commission. *City of Coahoma · v. Public Utility Commission,* 626 S.W.2d 488 (Tex.1981). By including municipally-owned utilities within the definition of a "retail public utility," the legislature compelled this result, although it left an ambiguity with respect to the use of the more general term "public utility" in PURA § 53 which governs grandfather certificates. *Id.* We observe that the jurisdiction granted the Commission in PURA § 17(e) is not delegated in terms of the status or character of the entity which conducts utility operations or renders utility services in an area outside the limits of a municipality exercising exclusive original jurisdiction. It is sufficient for the Commission's jurisdiction if the activity (1) is merely a "utility" operation or service and (2) it occurs outside municipal limits:

> The commission shall have exclusive original jurisdiction over ... *utility* ... operations and services not within the incorporated limits of a municipality ....
> PURA § 17(e) (emphasis added).

The word "utility" is merely an adjective. It is important to note that § 17(e) is found within a section which carefully provides a detailed division of jurisdiction, original and appellate, between the Commission and municipalities, the original jurisdiction of each being divided along the line of the city or town limits.

■ It is undisputed that the water "sands" or strata here in issue lie outside the municipal limits of the City of Sherman. Thus any utility operations at that site by the City would lie within the exclusive original jurisdiction assigned to the Commission under PURA § 17(e). We hold, therefore, that PURA § 17(e) expressly gives the Commission jurisdiction to determine questions touching upon "utility ... operations ... and services not within the incorporated limits" of the City of Sherman, specifically the question of whether the operations contemplated by the City of Sherman will impair Luella's ability to serve its customers as required by PURA §§ 38 and 58(a), and whether such contemplated operations will violate the provisions of PURA § 60, quoted above.

■ If we be mistaken, however, as to the certainty with which PURA § 17(e) assigns to the Commission the power to determine questions concerning the extra-territorial operations of a municipally-owned utility and their effect upon the ability of another utility to serve its customers, including the question of whether such intended operations contravene the provisions of PURA § 60, we hold, in addition, that the definitions of a public utility in PURA § 3(c) and § 49(b) create an ambiguity with respect to the authority granted the Commission in PURA § 17(e) and § 60. We resolve the ambiguity by holding, for the reasons that follow, that the Commission has the authority to determine whether the intended operations by the City of Sherman will result in Luella's inability to provide

the services required under its certificate and whether those operations will violate PURA § 60.

The term "public utility" has been held to be ambiguous with respect to its usage in PURA article VII, and, therefore, in need of judicial construction, under the general principles or rules of statutory construction, so as to give effect to the intention of the Legislature. *City of Coahoma v. Public Utility Commission, supra.* Following the reasoning of the Supreme Court of Texas in *Coahoma*, which resulted in the inclusion of a municipally-owned utility under the term "public utility," notwithstanding the definitional exclusion of a municipally-owned utility for most purposes of PURA, we believe the same result is compelled in this case.

The City of Sherman claims, with respect to the operations it intends to conduct, and which are challenged here by Luella, that PURA § 60 cannot apply because the City is not a "public utility" forbidden by that section to interfere with the system of another "public utility." The City relies upon the exclusion of municipally-owned utilities contained in the definition of "public utility" set forth in PURA § 3(c) and § 49(b). While arguable, this is a slender reed upon which to rely and such an interpretation of the relevant statutory provisions is impermissible in our view, given the enormous disorder which must follow that interpretation, with respect to utilities regulation under PURA generally and the comprehensive regulatory system promulgated therein.

Implicit in several sections of PURA is the jurisdiction vested in the Commission to prevent and adjust conflicts between the providers of utility services which occur outside municipal limits. PURA §§ 2, 16, 50, 51, 54(c). Section 60 of PURA expressly gives such power to the Commission. PURA § 53 *includes* municipally-owned public utilities under the *Coahoma* decision, notwithstanding the boiler-plate exclusion of PURA § 3(c) and 49(b), because that interpretation is mandated if the Commission is to adjust certain kinds of extra-terri-torial conflicts that occur between a municipally-owned utility and another utility seeking to operate under a certificate of convenience and necessity issued by the Commission. If such conflicts cannot be authoritatively adjusted in an orderly way, PURA belies its purpose of establishing "a comprehensive regulatory system which is adequate to the task...." PURA § 2.

Vital to the issuance of Luella's certificate of convenience and necessity was a finding by the Commission that a certificate was required "for the service, accommodation, convenience, or safety of the public," after due consideration of the pertinent facts. PURA § 54. Nevertheless, the proposition advanced by the City of Sherman is to claim an immunity from any action contemplated by the Commission aimed at preserving the advantages to the public that form the only foundation of Luella's certificate, and the only justification for granting a monopoly of utility service to Luella.

From another standpoint, the City's claim of immunity, owing to its status, is one which would leave it entirely free to interfere with the system and service rendered under another utility's certificate, even to the extent of destroying the "service, accommodation, convenience or safety of the public" which inhere in and justify that certificate. We find this proposition to be contrary to the spirit of PURA and the intent of the Legislature. It is a technically-permissible argument only because of the general definition given in PURA § 3(c), and the more particular definition in PURA § 49(b). The argument requires that we impute to the Legislature an intent to promulgate, contrary to the public interest, an absurdity, an injustice and a contradiction. We may not make that imputation. *Magnolia Petroleum Co. v. Walker*, 125 Tex. 430, 83 S.W.2d 929 (1935).

Therefore, whether the meaning of "utility operations" as used in PURA § 17(e) is unambiguous as we believe it to be, or ambiguous because of PURA § 3(c) and

§ 49(b),[3] we hold the Commission has jurisdiction to determine Luella's complaint that the City's intended operations and actions threaten Luella's system and its ability to discharge its statutory duties as a holder of a certificate of public convenience and necessity issued by the Commission.

■ The district court's holding with respect to the statutory power of the Commission to regulate the production or adjustment of rights in groundwater is erroneous as well. It is not claimed that the Commission has any such power, of course, but the trial court holding misinterprets the issue presented by Luella's complaint. That holding mistakenly assumes that the production and transportation of groundwater is the *sole* issue presented by the complaint and that any final order issued by the Commission would be, in its essential nature, one which adjudicates correlative rights in the groundwater. Moreover, the trial court's holding: (1) assumes the existence of mutually exclusive statutory grants of regulatory power to different administrative agencies; and (2) ignores the rules of administrative law which are applicable in resolving conflicts in regulatory jurisdiction, particularly the rules which apply when two or more agencies are given regulatory power with respect to different aspects of a single activity.[4]

---

3. That is to say, the word "utility" in the term "utility operations" is susceptible of two reasonable but different interpretations: It is a *descriptive* adjective denoting the inherent nature or quality of the pertinent "operations;" or, it is a *pronominal* adjective denoting by whom the "operations" are conducted. Under the latter interpretation, the "operations" of municipally-owned utilities would be excluded from PURA § 17(e) because PURA § 3(c) excludes municipally-owned utilities from the definition of the term "public utility" *and* the definition of "utility" as well. Under the former interpretation, any activity by a municipally-owned utility would be included in PURA § 17(e) if that activity can reasonably be said to be a "utility" operation because of its very nature or quality.

4. It is possible for there to be two kinds of concurrent jurisdiction and a resulting conflict in jurisdiction. One may be classified as involving dual regulatory power over the *same aspect of a single activity or thing.* Examples include the conflicts presented in *Mount Enterprise Indep. School Dist. v. Colley,* 424 S.W.2d 650 (Tex.Civ.App.—Tyler 1968, no writ), and in *London Indep. School Dist. v. Thomerson,* 223 S.W.2d 314 (Tex.Civ.App.—San Antonio 1949, writ dism'd). In the former case, two different school districts each attempted to annex a third, presenting the issue of which had the power to do so. The court held their jurisdiction was concurrent under the applicable statutes and decided the case on the basis of the general rule:

> (W)here the powers of two bodies are coordinate or equal, the tribunal first acquiring jurisdiction has the right to retain it until it has completely disposed of all matters and issues so presented to it.

424 S.W.2d at 655, *citing, State v. Baker,* 120 Tex. 307, 40 S.W.2d 41 (1931). *See also Industrial Welfare Commission v. Superior Court,* 27

Cal.3d 690, 613 P.2d 579, 166 Cal.Rptr. 331 (1980).

In the foregoing cases, co-equal regulatory bodies each had jurisdiction over the *same aspect* of an activity or thing. Another kind of concurrent jurisdiction is applicable to the present case. It involves the conflict presented when two regulatory bodies exercise power over *different* aspects of one activity. *E.g., Orange County Air Pollution Control Dist. v. Public Utility Commission,* 4 Cal.3d 945, 484 P.2d 1361, 95 Cal.Rptr. 17 (1971).

In that case, a utility sought permission to construct an electrical generating unit. The utility first applied to the Public Utility Commission for a certificate of convenience and necessity to erect the unit. Next, it filed with the pollution control district for an operating permit. Before the utility commission acted, the pollution district denied the application made to it. Thereafter, the utility commission, asserting its jurisdiction to be "paramount," and knowing that the pollution control district had denied the operating permit, granted the certificate of convenience and necessity and directed that construction begin immediately. The question presented was which agency would properly regulate the electrical generating plant. The court reviewed the respective grants of power to each agency and held that each had a statewide concern with the activities under its control. The court stated the following:

> We conclude that the Legislature has established one statutory scheme for the general regulation of public utilities, another for the general regulation of air pollution. (T)he commission must share its jurisdiction over utilities regulation where that jurisdiction is made concurrent by another (especially a later) legislative enactment.

484 P.2d at 1367. The rule of the *Orange County* case would properly apply only when the statutory grants of power to the agencies involved failed to provide for an adjustment of

It is obvious and admitted that the Texas Department of Water Resources has jurisdiction over the production and transmission of groundwater in the State. Texas Water Code Ann. § 28.002 (Vernon Supp. 1980–1981). Under the Code Construction Act, Tex.Rev.Civ.Stat.Ann. art. 5429b–2 (Vernon Supp. 1980–81), we are required to construe particular provisions of that statute with the presumption that the entire statute is intended to be effective, that a just and reasonable result is intended and that the public interest is favored over any private interest. We may consider the object to be obtained by the statute and the consequences of a particular construction. *Id.*, §§ 3.01, 3.03.

We observe that the case before us presents a conflict with respect to groundwater, one utility claiming that its ability to furnish its customers water under its certificate of convenience and necessity is threatened by another utility's intention to exploit the same groundwater for its customers. Nevertheless, the conflict has dual aspects. The Public Utility Commission has jurisdiction over utility operations and services outside municipal limits and, we have held, over both competing utilities for the purpose of adjusting conflicts between them with respect to their operations and services. Simultaneously, the Department of Water Resources has jurisdiction over the production and transmission of the groundwater, the very thing which each utility requires for its utility service. Each agency, we presume, intends to regulate only an activity within the authority delegated to it by the Legislature, utility operations in the one case and the production and transmission of groundwater in the other.

We find that neither the relevant portions of the Texas Water Code nor those of PURA address the issue or control the result when such conflicts in regulatory power occur. It appears that each of the two agencies has a statewide concern in their legitimate spheres of regulation and a distinctly-different competence and expertise which it brings to bear in the public interest in resolving two different and complex problems of modern life in our State: Utilities regulation and water administration. Neither agency, it appears from the statutes, would have the means nor the authority to pass upon the total impact of the problems presented by the facts of this case. We hold, therefore, that *both* the Texas Department of Water Resources and the PUC may validly regulate within their legitimate sphere of regulation in this case.

■ Counsel for the City informs us that a $7.5 million bond issue has been approved by the Texas Water Commission to construct the facilities required for exploitation of the groundwater by the City of Sherman. It appears, then, that all that remains is (1) a determination by the Public Utility Commission that Luella's ability to perform its statutory duties will not be impaired by the City's exploitation of the same source of water or (2) some other adjustment be ordered by the Commission. It appears also that the issues are fairly presented by Luella's complaint and the judicial department may not prejudge those issues, for they are within the exclusive jurisdiction of the Commission to determine.

In accordance with our holdings above, we reverse the judgment of the trial court, dissolve its injunction, and render judgment under the Uniform Declaratory Judgments Act, Tex.Rev.Civ.Stat.Ann. art. 2524–1 (Vernon 1965), that the Public Utility Commission is not without jurisdiction to entertain the complaint filed by Luella.

Appellees' motion for rehearing raises several assignments of error which do not dissuade us from our holding but do deserve a reply. The first assignment complains of our holding that PURA § 17(e) vests in the

conflicts in regulation and the grants are otherwise equal in scope, *i.e.*, state-wide and not local. In *Western Oil & Gas Association v. Orange County Air Pollution Control Dist.*, 14 Cal.3d 411, 534 P.2d 1329, 121 Cal.Rptr. 249 (1975), the court found that the pollution control district could not regulate the lead content of gasoline since its statutory grant of power limited its regulation of emissions to "non-vehicular sources." Thus, the relevant statutory provisions presented, in truth, no conflict in regulatory jurisdiction.

Commission a power to hear and determine the complaint of a water supply corporation that the extra-territorial operations of a municipally-owned public utility threatened to interfere with the former's ability to render the utility service contemplated by the certificate of convenience and necessity issued to it by the Commission. The second and third assignments of error question our correlative holding that PURA § 60 empowers the Commission to enter an order which terminates the controversy between the municipally-owned public utility and the water supply corporation. The fourth and fifth assignments of error condemn our holdings on the ground that the Commission is ill-equipped to hear and determine such controversies, for that agency is not familiar with the development and conservation of natural resources.

With respect to our construction of PURA § 17(e), we reject the contention that the section was intended to be a mere clarification of the proposition that municipal regulatory power does not extend beyond municipal limits. The subsection is found among a *grant of jurisdiction or regulatory power* to the Commission and to municipalities, respectively, the whole being divided between the Commission and municipalities along the municipal limits of each city and town. PURA §§ 16–20. More interesting is appellees' contention that PURA § 17(e), if given the meaning we attribute to it, conflicts with several other statutory provisions, from which conflict appellees conclude that our construction must be erroneous. Appellees refer to PURA § 26(c); 1979 Tex.Gen.Laws, ch. 57, at 93 (S.B. 418); Tex.Rev.Civ.Stat.Ann. arts. 1108, 1109 and 1175 (1963); and Tex. Water Code Ann. § 12.013 (1972).

■ We observe initially that a general grant of governmental power, as PURA § 17 purports to be, must be given residual and overall effect even though there may exist a conflict with other statutory provisions which to a degree supplement, explain, refine or even negate the general grant of power in more specific circumstances. For various reasons, the more particular provision operates as an exception to the general rule, but only to the extent of the circumstances described in the more particular provision. *Forwood v. City of Taylor,* 147 Tex. 161, 214 S.W.2d 282 (1948); *Farmers' & Mechanics' National Bank v. Hanks,* 104 Tex. 320, 137 S.W. 1120 (1911); *Lufkin v. City of Galveston,* 63 Tex. 437 (1885); 2A C. Sands, *Statutes and Statutory Construction,* § 51.05 (1973). PURA § 26(c), for example, implies the original power of a municipality to set rates for its municipally-owned gas and electric utilities, even those rates applicable to customers who reside outside municipal limits. With respect to electric rates, then, a conflict is possible, for PURA § 17(e) provides "the *commission* shall have exclusive original jurisdiction over electric . . . rates . . . not within the incorporated limits . . . ." (emphasis added) Which rate-setting authority, the municipality or the Commission, must set rates for those customers who live outside the municipal limits? We will assume, for the purposes of discussion, that these circumstances call for the setting of "rates . . . not within the incorporated limits . . . ." And even if we make the further assumption that the more particular statute, PURA § 26(c), prevails over the general statute, PURA § 17(e), we are unwilling to make the greatly extended generalization advocated by appellees, to the effect that the Commission has *no power whatever* over municipally-owned utilities operating outside municipal limits, even when those operations threaten to interfere with another public utility's operations and system wholly outside municipal limits.

PURA § 26(c) is obviously a more specific provision as to the original setting and review of official rates for electricity and gas, in the specific circumstances there set forth. If we assume a conflict exists, nevertheless the more general provision of PURA § 17(e) remains and is entitled to enforcement under PURA § 60, except in the more particular and limited circumstances contemplated by PURA § 26(c), relating to the municipal power to set rates for the customers of a municipal utility, irrespective of whether they reside within or without municipal limits.

Appellees refer to articles 1108, 1109, and 1175 and the powers there delegated to cities and towns to own and operate a waterworks, including the power to extend lines outside municipal limits, own land for waterworks purposes outside municipal limits, acquire water supply reservoirs outside municipal limits, and related powers. These municipal powers are admitted and obvious, but PURA implies they must be exercised under Commission regulation where that regulation is applicable, for to the extent any statutory grant of such power conflicts with PURA, it is expressly repealed. PURA § 90; *City of Lubbock v. South Plains Electric Cooperative, Inc.,* 593 S.W.2d 138 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). PURA contemplates, however, not the repeal of such municipal powers but their preservation and implementation. PURA §§ 21–26. We need not discuss the matter further for we believe the letter and spirit of PURA is abundantly clear in this respect.

Senate Bill 418, 66th Leg., Reg. Sess. (1979), an act regulating water supply and sewer service corporations, and amending PURA § 49, plainly preserves the division of regulatory power along the line of municipal limits, notwithstanding the amended definitions of "public utility" and "retail public utility" made thereby. The legislative history of S.B. 418 referred to by appellees is not accurately set forth by them. Instead of debating whether to empower the Commission to regulate municipally-owned utilities, to the extent they operated outside municipal limits, the Legislature debated the issue whether to give the Commission plenary regulatory power over municipally-owned utilities with no regard to the geographic area of their operations, as the original version of S.B. 418 provided. It was never suggested that the Commission have no regulatory power at all over municipally-owned utilities, even outside municipal limits, as appellees contend.

Concerning appellees' assignments of error based upon the lack of expertise which they attribute to the Commission in matters pertaining to natural resource development and conservation, we merely observe that this deficiency, and a corresponding deficiency in the Department of Water Resources in the matter of utility regulation, illustrate the necessity for our holding that each agency should regulate that aspect of the total problem which it is given power to regulate, and support the converse proposition that neither agency should attempt to regulate that aspect of the problem wherein it lacks the relevant expertise, which is to say that neither agency is equipped to handle the entirety of the problem presented in the present case.

Appellees' motion for rehearing is overruled.

PHILLIPS, Chief Justice, dissenting.

I respectfully dissent.

In my judgment, this Court misinterprets PURA § 17(e) Article 1446c, Tex.Rev.Civ. Stat.Ann. (1980).

At the outset, the Court's opinion is in conflict with our decision in *Texas Water Rights Commission v. City of Dallas,* 591 S.W.2d 609 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). There we held that the Texas Water Rights Commission had complete jurisdictional authority under Water Code section 6.056, over the rates charged by the City of Dallas to its customer cities. This Court made no attempt to hold that the Public Utility Commission, pursuant to PURA § 17(e), maintained exclusive original jurisdiction over such intercity water sales or services.

The Court's interpretation of PURA § 17(e) further conflicts with § 12.013 of the Texas Water Code, and other Water Code rate fixing provisions. Section 12.013 of the Texas Water Code, directs the Texas Water Commission to fix reasonable rates for the furnishing of raw or treated water by one political subdivision of the state to another. Subsection (h) of § 12.013 states "nothing herein contained shall affect the jurisdiction of the Public Utility Commission." By adopting § 12.013 in 1977 Tex. Gen.Laws, Ch. 870 at 2207, the Legislature apparently did not intend to involve any jurisdiction of the Public Utility Commission earlier established under § 17(e) of PURA.

By definition, the sale of potable water from one municipality to another entails rates, operations and services not within the incorporated limits of the municipality providing the water service. Yet this Court has determined such matters to be within the exclusive original jurisdiction of the Public Utility Commission under PURA § 17(e).

In the instant case, the City of Sherman is not seeking to have its service area protected. Nor is the appellant Luella Water Supply Corporation seeking protection of its service area from service encroachments. To the limited extent that PURA Article VII is directed at municipally owned utilities, it creates Commission jurisdiction strictly over those municipally owned utilities extending services either beyond their corporate limits or within an area being served by another retail public utility. It is undisputed that the City of Sherman is not attempting to provide or extend services within the Luella Water Supply Corporation's service area. Rather the record is clear that the City of Sherman is attempting only to obtain a more adequate and reliable source of supply for its inhabitants. I would submit that there is no ambiguity between § 3(c), § 49 and § 60 of PURA.

I would affirm the judgment of the trial court.