SAN ANTONIO INDEPENDENT SCHOOL DISTRICT et al., Appellants,

v.

CITY OF SAN ANTONIO, Appellee.

No. 5593.

Court of Civil Appeals of Texas, Eastland.

April 9, 1981.

Rehearing Denied April 30, 1981.

Harvey L. Hardy, Michael P. Hodge, Asst. Dist. Atty., Peter Torres, Jr., San Antonio, for appellants.

Martha V. Terry, Asst. Atty. Gen., Austin, amicus curiae.

W. Roger Wilson, Matthews, Nowlin, Macfarlane & Barrett, Crawford B. Reeder, Asst. City Attys., San Antonio, for appellee.

RALEIGH BROWN, Justice.

The issue is the proper construction of Section 48 of Tex.Rev.Civ.Stat.Ann. art. 1446c (Vernon 1980), the "Public Utility Regulatory Act."[1] City of San Antonio sued twelve independent school districts in Bexar County, to-wit: Edgewood, Harlandale, Southside, Southwest, South San Antonio, Somerset, East Central, Judson, Fort Sam Houston, Alamo Heights, North East and Northside together with the San Antonio Independent School District and the Bexar County Hospital District for declaratory and monetary relief. All parties filed motions for summary judgment except San Antonio Independent School District. The City's motion was granted, and those of defendants were denied. The State of Texas was an intervenor. Its motion for summary judgment was denied. All defendants appeal. Intervenor, State of Texas, does not. We reverse and render in part, and reverse and remand in part.

The City of San Antonio, which owns and operates its gas and electric systems, sought recovery of certain funds constituting a portion of appellants' gas and electric rates, which appellants had either been withholding or paying into escrow accounts since 1975 on the theory that Section 48 exempts school districts and hospital districts from paying rates which "may be used to make or to cover the cost of making payments in lieu of taxes to the municipality by which the public utility is owned." San Antonio contends that Section 48 is inapplicable to it because no municipally-owned utility is a "public utility." All parties concede that there are no fact issues.

The court in *Magnolia Petroleum Co. v. Walker,* 125 Tex. 430, 83 S.W.2d 929 (1935) expressed the rule to be applied in construing a statute as:

No inflexible rule can be announced for the construction of statutes. However, the dominant rule to be observed is to give effect to the intention of the Legislature. Generally the intent and meaning is obtained primarily from the language of the statute. In arriving at the intent and purpose of the law, it is proper to consider the history of the subject-matter involved, the end to be attained, the mischief to be remedied, and the purposes to be accomplished. See 59 C.J., § 570, p. 958. "Where, however, the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning. If the intentions of the Legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction,

---

1. Sec. 48. No payments made in lieu of taxes by a public utility to the municipality by which it is owned may be considered an expense of operation for the purpose of determining, fixing, or regulating the rates to be charged for the provision of utility service to a school district or hospital district. No rates received by a public utility from a school district or hospital district may be used to make or to cover the cost of making payments in lieu of taxes to the municipality by which the public utility is owned.

consistent with the general principles of law." 59 C.J., p. 957, § 569; *Empire Gas & Fuel Co. v. State of Texas,* supra [121 Tex. 138, 47 S.W.2d 265].

It is undisputed that the school districts lost a large portion of their tax base when the City of San Antonio acquired the gas and electric systems. It is also undisputed that the purchase was approved by the voters, in part because of a promise to pay schools regular "in lieu of tax" payments. Therefore, in considering "the end to be attained, the mischief to be remedied and the purposes to be accomplished" by Section 48, we conclude that the legislature sought to bring some financial relief to school and hospital districts and their taxpayers where a municipality owns a utility service.

The court in *Texas Bank & Trust Co. v. Austin,* 115 Tex. 201, 280 S.W. 161 (1926) said:

No rule of statutory construction is more universally recognized than that which compels the courts to give some effect to every express declaration of legislative intent. The rule is clearly stated in *M., K. & T. Ry. Co. of Texas v. Mahaffey,* 105 Tex. [394] 398, 150 S.W. 881, citing Justice Harlan's opinion for the United States Supreme Court in *Montclair v. Ramsdell,* 107 U.S. [147] 152, 2 S.Ct. [391] 395, 27 L.Ed. 431, where it is said:

"It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed."

The City argues that Section 48 is inapplicable to it because no municipally-owned utility is a public utility. Its argument is founded on the definition of "public utility" and "utility" contained in Section 3(c) [2] and 3(o) [3] of Article 1446c, supra, and the use of the term "public utility" in Section 48. We disagree.

The plain language of Section 48 concerns public utilities owned by municipalities. By its terms Section 48 clearly applies to the City of San Antonio unless Section 48 is dependent upon the definition section of 1446c for meaning. We hold it does not. Tex.Rev.Civ.Stat.Ann. art. 1446a (Vernon 1980) uses the terms "public utility" or "utility" interchangeably. It authorizes municipalities to provide such services. If the definitions, as urged by City of San Antonio, were applicable to Section 48, a public utility could not be owned by a municipality. If this be true, Section 48 would have no meaning. It would be totally void and inoperable for any purpose. We refuse to hold that the legislature has done such an absurd thing.

Although Section 48 may have some imprecise language, the intent of the legislature is clear. As stated by the court in *City of Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273 (1951):

It is settled that the intention of the Legislature controls the language used in an act, and in construing such act the court is not necessarily confined to the literal meaning of the words used therein, and the intent rather than the strict letter of the act will control. 39 Tex.Jur., pp. 180, 181 § 95; 50 Amer.Jur., p. 232, § 240; 59 C.J., p. 964, § 593.

This Court, in *Gilmore v. Waples,* 108 Tex. 167, 188 S.W. 1037, said: "Courts will not follow the letter of a statute when it leads away from the true intent and purpose of the Legislature and to conclusions inconsistent with the general purpose of the Act."

In the recent case of *Texas & N. O. Ry. Co. v. Railroad Commission of Texas,* 145 Tex. 541, 200 S.W.2d 626, 629, this Court, in construing the legislative act involved in that case, said that "whenever the legislative purpose is ascertained, the sig-

---

**2.** (c) The term "public utility" or "utility," when used in this Act, includes any person, corporation, river authority, cooperative corporation, or any combination thereof, other than a municipal corporation. . . .

**3.** (o) "Municipally-owned utility" means any utility owned, operated, and controlled by a municipality or by a nonprofit corporation whose directors are appointed by one or more municipalities.

nificance of words used may be restricted or enlarged in order to effectuate that purpose and to give the act the meaning which the lawmakers manifestly intended."

This Court, in *Brazos River Conservation and Reclamation District et al. v. E. P. Costello et al.*, 135 Tex. 307, 143 S.W.2d 577, 580, 130 A.L.R. 1220, said: "The dominant rule controlling the construction of a statute is to ascertain the intention of the legislature expressed therein. An Act should be given a fair and sensible construction, in order to carry out the purposes for which it was enacted, and not be construed in such manner as to nullify or defeat its purposes."

We further hold that the term "public utility" referred to in Section 48 is not dependent upon Section 3(c)(4) which has been held unconstitutional in *Morris v. City of San Antonio*, 572 S.W.2d 831 (Tex.Civ. App.—Austin 1978, no writ).

We reverse and render judgment for all defendants except San Antonio Independent School District, for whom we reverse the judgment and remand the cause since such defendant has not filed a motion for summary judgment.