**CITY OF COAHOMA**

v.

**PUBLIC UTILITY COMMISSION OF TEXAS et al.**

No. C–98.

Supreme Court of Texas.

Nov. 25, 1981.

Rehearing Denied Feb. 3, 1982.

McGinnis, Lochridge & Kolgore, Pamela M. Giblin, Austin, for petitioner.

Mark White, Atty. Gen., J. Scott Wilson, Asst. Atty. Gen., Austin, Wilson, Olson, Stem & Farr, Lyndon Olson, Waco, for respondent.

CAMPBELL, Justice.

This is an appeal from an administrative order of the Public Utility Commission. The opinion of the court of civil appeals is reported at 610 S.W.2d 528. The judgment of that court is affirmed in part and reversed in part.

In 1955, Howard County Water Control and Improvement District No. 1 (Water District) voted a bond issue to construct a water line from the city of Big Spring to Coahoma. The lines were constructed, and the Water District contracted to purchase water at wholesale from Big Spring. In a 30 year (1955–1985) contract, the Water District agreed to sell water to Coahoma, and Coahoma agreed to operate and maintain the water system and sell water at retail to area residents. Under the contract Coahoma is to pay the water costs and other expenses of the system and pay for the bonds issued by the Water District in 1955.

Since 1955 Coahoma has provided water service to city residents and to nonresidents. Most of the nonresidents live within the Water District. Coahoma owns the water outlets inside the city limits, but the Water District owns the water mains and outlets outside the city. About one-half of the system's water outlets are outside the city.

On September 1, 1975 the Public Utilities Regulatory Act, TEX.REV.CIV.STAT. ANN. art. 1446c, (PURA) became effective. The purpose of this Act is to establish a comprehensive regulatory system over the rates, services, and operations of public utilities. The Act provides that after one year from September 1, 1975, no "Public Utility" may render service to the public and that no "Retail Public Utility" may provide retail service to any area already served by another retail public utility without obtaining from the Public Utility Commission a Certificate of Public Convenience and Necessity (Merit Certificate). The Act also provides that the Commission shall issue a certificate to a public utility, actually providing service, if application is made within six months from September 1, 1975 (Grandfather Certificate). City timely filed for a "Grandfather Certificate" for the area within the City and the area served by it outside the City but within Howard County Water Control and Improvement District. The Water District applied for a "Merit Certificate" for the area outside Coahoma city limits being served by Coahoma.

Our question is "Is the City entitled to a Grandfather Certificate for the area served by it outside the City Limits but inside the District?" We hold that it is.

"Municipality" and "Public Utility" or "Utility" are defined in the Act in Article 1, sec. 3, as follows:

§ 3(b)  The term "Municipality" ... includes cities and incorporated villages or towns ... organized under the general, home rule, or special laws of the State.

§ 3(c) The term "Public Utility" or "Utility" includes any person, corporation, river authority, cooperative corporation, or any combination thereof, *other than a municipal corporation ....* "

However, in Article VII, which deals specifically with certificates of convenience and necessity, we have a new term, "Retail Public Utility," and a limiting definition of "Public Utility." Section 49 provides that for the purpose of Article VII only:

(a) "Retail Public Utility" means any person, corporation, water supply or sewer service corporation, municipality ... operating ... facilities for providing retail utility service.

(b) "Public Utility" does not include any person, corporation, *municipality,* ... under the jurisdiction of the Railroad Commission.

The next section, § 50, tells us when and for whom certificates are required. Section 50 provides:

Beginning one year after the effective date of this Act ...:

(1) No *public utility* may in any way render service ... to the public under any franchise or permit without first having obtained ... a certificate that the present or future public convenience and necessity require or will require such installation operation or extension.

(2) ... no *retail public utility* may furnish ... or extend retail public utility service to any area to which retail public service is being lawfully furnished by another retail public utility ... without first having obtained a Certificate of Public Convenience and Necessity that includes the area in which the consuming facility is located.

The "Grandfather Certificate" section, § 53, provides:

On application made to the Commission within 6 months after the effective date of this Act, the Commission shall issue a Certificate of Public Convenience and Necessity for the construction or operation then being conducted to any public utility actually providing service ... on the effective date of this Act....

The "Merit Certificate" section, § 54, provides:

(b) Except for certificates for prior operations granted under Section 53, the Commission may grant applications and issue certificates only if the Commission finds that the Certificate is necessary for the service, accomodation, convenience or safety of the public ....

The Commission granted Coahoma a Section 53 (Grandfather) Certificate within its limits and granted the Water District a Section 54 (Merit) Certificate within its limits. The district court set aside the Commission's order and remanded the cause. The court ordered the Commission to grant a Section 53 Certificate to Coahoma for the area within the city limits and for the area which is outside its limits but within the Water District and which lies within 200 feet of any point along a water distribution line. On appeal by the Commission and the Water District, the court of civil appeals reversed the trial court's judgment with instructions that the Commission decide the applications of Coahoma and the Water District under the guidelines of section 54. 610 S.W.2d 528.

Article VII is ambiguous. To interpret this Article we must apply the principles of statutory construction stated in *Magnolia Petroleum Co. v. Walker,* 125 Tex. 430, 83 S.W.2d 929, 934 (1935).

No inflexible rule can be announced for the construction of statutes. However, the dominant rule to be observed is to give effect to the intention of the Legislature. Generally the intent and meaning is obtained primarily from the language of the statute. In arriving at the intent and purpose of the law, it is proper to consider the history of the subject-matter involved, the end to be attained, the mischief to be remedied, and the purposes to be accomplished. *See* 59 C.J.[S], § 570, p. 958. "Where, however, the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of as-

certaining the true meaning. If the intentions of the Legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction, consistent with the general principles of law." 59 C.J.[S], p. 957, § 569; *Empire Gas & Fuel Co. v. State of Texas* . . . [121 Tex. 138, 47 S.W.2d 265].

Two law review articles, Pleitz, *Municipalities and the Public Utility Regulatory Act*, 28 BAYLOR L. REV. 977 (1976) and Toben, *Certificates of Convenience and Necessity under the Texas Public Utility Regulatory Act*, 28 BAYLOR L. REV. 1115 (1976), reach opposite results as to the meaning of Article VII. The briefs and oral arguments urge different constructions. The Commission refused to grant Coahoma a Grandfather Certificate after having granted certificates to more than 20 other cities, many of which certificates included areas wider than the corporate limits. The transcript on H.B. 819 *Before the Joint House and Senate Conference Committee* (June, 1975) is not helpful in determining legislative intent. Therefore, in determining the question of whether a city is entitled to a Section 53 Certificate, we must give the statute a reasonable construction consistent with general principles of law.

The definition of "Public Utility" in Article I, section 3(c) of the PURA excludes municipal corporations. However, the definitions section of Article VII, which deals specifically with certificates of need, creates a "Retail Public Utility" in section 49(a) which includes municipalities.

Whether we interpret section 53 to exclude municipalities from its coverage because of section 3(c), or to include municipalities because Article VII creates retail public utilities which include municipal corporations, the language of the statute is of doubtful meaning. If we interpret "public utility" in section 53 as it is defined in section 3(c), a city could not be "grandfathered" for a service area, but another entity could be certified (section 54) in that area without regard to the effect on the city's prior service. Then, if the city wished to continue to provide service and before it could receive a certificate under section 54, the Commission would have to consider the effect on the utility which extended its service into the city's area.[1]

█ It is unreasonable to conclude that the Legislature intended this construction of section 53 of the PURA, because it deprives cities of the protection from encroachment afforded to public utilities under the Act. Because the language of the statute is of doubtful meaning, and the above construction is unreasonable, we hold that the term "public utility" used in section 53 includes" retail public utility" as defined in section 49(a). This holding is consistent with the Commission action. In its findings of fact or conclusions of law, the Commission does not mention that Coahoma is not a public utility for section 53 purposes. The order, however, grants Coahoma a section 53 Certificate for the area within the city limits. If Coahoma is a "public utility" for the area within its city limits, then it is a "public utility" for all the area it services.

█ The next issue is whether the Water District was entitled to a "Merit Certificate" under section 54. We hold the order granting the Water District a certificate is invalid under the standard established in TEX.REV.CIV.STAT.ANN. art. 6252–13a § 19(e) for these reasons: (1) the Commission failed to determine whether a certificate was necessary for the service, accommodation, convenience, or safety of the public as required by section 54(b); (2) the Commission failed to make findings of fact on the criteria set out in section 54(c) including the adequacy of the existing ser-

---

1. Sec. 54(c). Certificates of convenience and necessity shall be granted on a non-discriminatory basis after consideration by the commission of the adequacy of the existing service, the need for additional service, the effect of the granting of a certificate on the recipient of the certificate and on any public utility of the same kind already serving the proximate area, and on such factors as community values, recreational and park areas, historical and aesthetic values, environmental integrity, and the probable improvement of service or lowering of costs to consumers in such area resulting from the granting of such certificate.

vice, the need for additional service, the effect of granting a certificate on Coahoma, the effect of granting a certificate on certain community factors, the probable improvement of service, and the lowering of costs to consumers in the area; and (3) the order is not supported by substantial evidence.

Coahoma complied with the requirements of section 53 and is entitled to receive a "Grandfather Certificate" for all the area it serves. That part of the judgment of the court of civil appeals holding that Coahoma's application be remanded for consideration under section 54 is reversed, and the trial court's judgment ordering the Commission to issue Coahoma a section 53 Certificate of Public Convenience and Necessity is affirmed. We affirm the part of the court of civil appeals' judgment which remands the cause to the Commission with instructions that proceedings on the Water District's application be conducted under section 54.

The judgment of the court of civil appeals is reversed in part, and is affirmed in part.