**PUBLIC UTILITY COMMISSION OF TEXAS, et al., Appellants,**

v.

**CITY OF AUSTIN, Appellee.**

**No. 3–86–019–CV.**

Court of Appeals of Texas, Austin.

April 15, 1987.

Rehearing Denied May 13, 1987.

Jim Mattox, Atty. Gen., Stephen J. Davis, Asst. Atty. Gen., Austin, for Public Utility Com'n of Texas.

J. Alan Holman, Dennis P. Reis, Brown, Maroney, Rose, Barber & Dye, Austin, for FAIR and Motorola, Inc.

Andrew Kever, C. Robert Heath, Bickerstaff, Heath & Smiley, Austin, for City of Austin.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

CARROLL, Justice.

The Public Utility Commission ("the Commission") and appellant ratepayers [1] appeal from a declaratory judgment rendered in favor of the City of Austin. The district court's final judgment declared, in part, that the Legislature's attempted delegation of authority to review rates of municipally-owned utilities to the Commission under § 26(c) of the Public Utilities Regula-

1. Federation of Austin Industrial Ratepayers    and Motorola, Inc.

tory Act (PURA) was unconstitutional due to the absence of legislatively established standards. We will reverse the district court's judgment.

## THE CONTROVERSY

The City of Austin owns and operates its own electric generation and transmission facilities which serve customers both within and without its corporate limits. The Austin City Council is responsible for setting the electric rates for both electric service customers inside the city and those customers living outside the city limits but within the City's certificated service area. Dissatisfied with a recent rate-increase, appellants, who comprise certain ratepayers living within the certificated service area of the City's municipally-owned electric utility but outside the municipal limits, filed a petition pursuant to PURA § 26(c) for review of the Austin City Council's ratemaking actions.

Before the Commission entered a final order in that electric rate proceeding, the City of Austin filed a declaratory judgment suit in the district court of Travis County. In general, the City disputed the authority of the Commission to review rates charged nonresident ratepayers by a municipally-owned electric utility and, by its suit, sought a judgment to that effect. Appellant ratepayers intervened at this point and aligned themselves with the Commission.

Ancillary to its declaratory judgment suit, the City also sought a temporary injunction. After a hearing, the district court temporarily enjoined the Commission from applying certain ratemaking standards to the City and from going forward with the proceeding until the agency established new standards. On appeal, we dissolved the district court's temporary injunction on grounds that the City had failed to demonstrate irreparable harm. *Public Utility Commission v. City of Austin*, 710 S.W.2d 658 (Tex.App.1986, no writ).

The present appeal is from the district court's final judgment rendered in the City's declaratory judgment suit. The particulars of that judgment declare PURA § 26(c) unconstitutional on account of the legislature's failure to provide standards apart from Article VI of PURA to guide the Commission's review of ratepayer appeals under PURA § 26(c). The relevant PURA provisions in this suit are as follows:

3(c) The term "public utility" or "utility," when used in this Act, includes any person, corporation, river authority, cooperative corporation, or any combination thereof, other than a municipal corporation....

. . . . .

26(c) Ratepayers of a municipally owned electric utility outside the municipal limits may appeal any action of the governing body affecting the rates of the municipally owned electric utility through filing with the commission petition for review signed by the lesser of 10,000 or 5 percent of the ratepayers served by such utility outside the municipal limits....

. . . . .

26(e) The commission shall hear such appeal de novo based on the test year presented to the municipality and by its final order shall fix such rates as the municipality should have fixed in the ordinance from which the appeal was taken....

Tex.Rev.Civ.Stat.Ann. art. 1446c §§ 3(c), 26(c) and 26(e) (Supp.1987).

## CONTENTIONS ON APPEAL

The Commission and appellant ratepayers raise a cumulative seven points of alleged error: (1) the district court lacked jurisdiction to issue a declaratory judgment under § 12 of the Administrative Procedure and Texas Register Act or the Uniform Declaratory Judgment Act; (2) the district court lacked jurisdiction on account of the doctrine of sovereign immunity; (3) the district court erred in declaring that Article VI of PURA and the related Commission rules do not apply to a review of the rates of a municipally-owned electric utility in a PURA § 26(c) appeal; (4) the district court erred in declaring that the legislature's delegation of authority to the Commission to review rates of a municipally-owned electric utility under PURA

§ 26(c) is unconstitutional and void due to the absence of legislative standards; (5) the district court erred in declaring that the Commission lacks jurisdiction to review rates charged out-of-city ratepayers by a municipality's electric utility; (6) the district court erred in declaring that PURA §§ 16(a), 17(d) and 27 do not apply to an out-of-city ratepayer appeal filed with the Commission challenging rates charged by a municipally-owned utility; and (7) the district court erred in declaring that PURA § 26(e) does not apply to a § 26(c) ratepayer appeal.

### JURISDICTION

The Commission asserts that neither Tex. Rev.Civ.Stat.Ann. art. 6252–13a, § 12 (Supp.1987), nor Tex.Civ.Prac. & Rem.Code Ann. § 37.004 (1986) (Uniform Declaratory Judgment Act) is an appropriate vehicle for declaratory relief if there exists another pending action between the same parties in which the issues involved in the declaratory action *may* be adjudicated. In other words, until the Commission resolves the issue of which statutory and administrative standards, if any, apply to appellant ratepayers PURA § 26(c) appeal, the district court lacks jurisdiction to render a declaratory judgment on the same issue. We disagree.

This Court has declared in the past that it is the duty of the trial courts to make the Uniform Declaratory Judgment Act and § 12 of the Administrative Procedure and Texas Register Act useful tools in the resolution of legal problems and controversies. *Bellegie v. Texas Board of Nurse Examiners*, 685 S.W.2d 431, 434 (Tex.App. 1985, no writ). Regardless of which statutory provision is used, if a declaratory judgment will terminate the uncertainty or controversy giving rise to the lawsuit, the trial court is duty-bound to declare the rights of the parties as to those matters upon which the parties join issue. *Id.*

The present question involves a statutory determination of the Commission's authority to review rates charged nonresident ratepayers by a municipally-owned utility. While statutory interpretations whose de-

termination will significantly affect the scope or design of the regulatory scheme will fall within the court's final authority, agencies are also responsible for statutory interpretation through agency rulemaking and the process of applying the statute to a concrete set of facts. In agency actions of this nature, the Administrative Procedure and Texas Register Act (APTRA) provides a procedure to obtain judicial declarations of the validity as well as the applicability of administrative rules, without prior resort to the agency. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 12 (Supp.1987).

Under APTRA § 12, a party has standing to challenge the validity or applicability of *any* rule if he can show some affirmative act by the agency to apply the rule to him, and that such application would adversely affect his legal rights or privileges. *See* Shannon & Ewbank, *The Texas Administrative Procedure and Texas Register Act Since 1976—Selected Problems*, 33 Baylor L.Rev. 393, 422 (1981). A party is not required to wait until an attempt is made to enforce the rule against him before he may seek declaratory relief. *State Board of Insurance v. Deffebach*, 631 S.W.2d 794, 797 (Tex.App.1982, writ ref'd n.r.e.).

Whether an affirmative act by the agency actually threatens or impairs a party's rights or privileges is often a fact question; however, situations do exist involving a clearly defined rule which leaves no doubt that it can be applied to the party's circumstances. We believe this latter situation is present in this appeal.

It is clear that under PURA § 26(c) the Commission is authorized to review electric rates set by municipalities for nonresident ratepayers. It is also clear that this authority is most properly exercised in accordance with the ratemaking standards in PURA §§ 37–47 and the corresponding Commission's substantive rules. The Commission's substantive rules for implementing the mandates of PURA Article VI adopt the definitions set forth in PURA § 3(c). *See* Public Utilities Commission, 21 Tex.Admin.Code § 23.3 (March 1, 1984). Accordingly, any application of PURA Arti-

cle VI standards necessarily entails a threatened application of the Commission's substantive rules. In addition, the hearing examiner's order No. 13 outlining applicable standards for appeals under PURA § 26(c) indicates that such standards and rules are in fact applicable. *Petition for Review of Certain Ratemaking Actions of the City of Austin,* Docket No. 6560, —— P.U.C. Bull. —— (January 28, 1986) (Order No. 13).

■ If the Commission had no intention of applying the standards in PURA §§ 37–47, then it should have so stated in a plea to the jurisdiction of the district court when the Commission was made a party to the suit. This plea would have successfully abrogated any allegations of threatened application made by the City. Given the present circumstance, however, we find a "threatened application" of Commission rules within the meaning of APTRA § 12 which would infringe upon the right of the City of Austin, as a home rule city, to set rates for its municipally-owned utility without Commission oversight. *See* Tex.Rev. Civ.Stat.Ann. art. 1175(13) (1963). The criterion for standing having been met, the district court's exercise of jurisdiction under APTRA § 12 was proper.

We also reject the Commission's contention that the district court lacked jurisdiction to render a declaratory judgment under the Uniform Declaratory Judgment Act. This appeal meets both prerequisites to receiving declaratory relief under Tex. Civ.Prac. & Rem.Code Ann. § 37.004 (1986): (1) a real controversy exists between the parties, and (2) the entire controversy may be determined by judicial declaration.

In conclusion, we find the district court's exercise of jurisdiction proper under either APTRA § 12 or the Uniform Declaratory Judgment Act. Appellants' first point of error is overruled.

## SOVEREIGN IMMUNITY

The Commission asserts, in a companion point of error to its jurisdictional challenge, that the City's suit to obtain declaratory relief is barred by the doctrine of sovereign immunity. In essence, the Commission contends that so long as it is properly exercising its lawfully delegated duties in the administration and enforcement of its controlling statute, no party may bring a suit to control the Commission's actions absent express legislative consent or statutory authorization.

■ It is established that suits challenging an agency's actions as being outside the scope of its authority are not suits against the state requiring legislative or statutory authorization. *See Director of the Department of Agriculture and Environment v. Printing Industries Association of Texas,* 600 S.W.2d 264 (Tex.1980); *Cobb v. Harrington,* 190 S.W.2d 709 (Tex. 1945). The substance of the City's complaint is that the Commission is attempting to act outside the delegated scope of its authority in reviewing appeals by nonresident ratepayers of a municipally-owned utility. Hence, the type of declaratory relief which the City requests, determining the lawfulness of the Commission's actions and proposed actions under PURA, may not be shielded by jurisdictional claims of sovereign immunity.

Appellants' second point of error is overruled.

## VALIDITY OF PURA § 26(c)

■ The power to regulate public utilities rests with the state legislature. *Railroad Commission v. Houston Natural Gas Corp.,* 289 S.W.2d 559, 562 (Tex.1956). This power may not be delegated by the Legislature without providing some criteria or safeguards to guide its use. *Texas Antiquities Committee v. Dallas County Community College District,* 554 S.W.2d 924, 927–28 (Tex.1977). Hence, a legislative delegation of rule-making authority must set forth standards in order to be valid. *Gerst v. Jefferson County Savings and Loan Association,* 390 S.W.2d 318, 320 (Tex.Civ.App.1965, writ ref'd n.r.e.); *see also Texas State Board of Dental Examiners v. Prichard,* 446 S.W.2d 905, 909 (Tex.Civ.App.1969, writ ref'd n.r.e.) (an administrative rule which regulates some oth-

erwise lawful activity must have some standards or criteria to guide the agency in determining which persons can be regulated and those who cannot; lacking such guidelines to control the agency's discretion, the rule is subject to being declared unconstitutional).

The central question for our review concerns what ratemaking standards will control in a PURA § 26(c) proceeding. If PURA has no criteria to guide the Commission's ratemaking authority in PURA § 26(c) appeals, then the statute is subject to being declared unconstitutional under the above authorities. The City's argument at trial which the district court ultimately accepted is a useful beginning point for resolving this appeal.

The City maintains that given the PURA § 3(c) definitional parameters of "public utility" and "utility" as excluding all municipally-owned utilities, the ratemaking standards in PURA Article VI (§§ 37–47) are not applicable since they refer solely to "public utilities." Consequently, PURA § 26(c) is unconstitutional lacking any criterion to guide the Commission's review of rates set by municipally-owned utilities for nonresident ratepayers. Furthermore, since PURA §§ 16(a), 17(d) and 27 are unavailable absent valid jurisdiction under PURA § 26(c), the rates set by the City for nonresident ratepayers are not subject to review by the Commission.

In adjudicating the parties' claims before this Court, which involve solely questions of law, we must ascertain the legislative intent behind PURA § 26(c) and apply the rules of construction set forth by the Texas Supreme Court.

In interpreting PURA provisions, the Texas Supreme Court has in the past applied the principles of statutory construction set forth in *Magnolia Petroleum Co. v. Walker,* 125 Tex. 430, 83 S.W.2d 929, 934 (Tex.1935), and quoted with approval in *City of Coahoma v. Public Utility Commission,* 626 S.W.2d 488, 490 (Tex.1981):

> No inflexible rule can be announced for the construction of statutes. However, the dominant rule to be observed is to give effect to the intention of the Legis-

lature. Generally, the intent and meaning is obtained primarily from the language of the statute. In arriving at the intent and purpose of the law, *it is proper to consider the history of the subject-matter involved, the end to be obtained, the mischief to be remedied and the purpose to be accomplished.* Where, however, the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning. If the intentions of the Legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction, consistent with general principles of law. (emphasis added).

*See also City of Sherman v. Public Utility Commission,* 643 S.W.2d 681, 684 (Tex. 1983).

■ Of course, it is also our duty to uphold the validity of a statute if it can be given a reasonable construction that will render it constitutional and at the same time carry out the legislative intent. *Rowan Drilling Co. v. Sheppard,* 87 S.W.2d 706, 707 (Tex.1935). Our analysis begins with an examination of the legislative history behind PURA § 26(c).

Before the passage of the Public Utility Regulatory Act (PURA), the power to regulate public utilities resided almost exclusively with municipalities. Local regulation of public utilities provided an avenue whereby the regulatory authority could respond to local desires and needs. The introduction of regional utility systems providing services to more than one municipality, however, made local regulation more difficult, if not impossible. *See* Webb, *The 1975 Texas Public Utility Regulatory Act: Revolution or Reaffirmation?,* 13 Hous.L. Rev. 1, 5 (1975). In response to inadequate public utility regulation, particularly outside municipal limits, PURA was enacted. PURA represents an attempt by the Legislature, for the first time, to create a comprehensive system for statewide regulation of utility services and rates, including provisions for determining who may appeal

from rates set by municipal ordinances and who may appeal from the Commission orders to district court.

Taken as a whole, PURA also represents an attempt to retain local regulation of public utilities while empowering the Commission to regulate regional service or service outside municipal limits. Towards that end, municipalities under PURA § 17(a) retain exclusive jurisdiction over the rates, operations, and services of electric, water, and sewer "utilities" within their city or town limits. In areas outside municipal limits, the Commission has exclusive original jurisdiction over these functions. PURA § 17(e).

This duality in regulation is also evident in the appellate scheme. Ratepayers *within* the city limits do not have the right of appeal to the Commission concerning municipal action related to the rates of a municipally-owned water, sewer, electric or gas utility.[2] In contrast, ratepayers *outside* the city are *expressly* granted the right to appeal municipally-owned gas or electric utility rates by filing a petition with the Commission. PURA § 26(c).

There is a logical basis for this different appellate treatment. As a preliminary matter, a municipal regulatory body in setting rates may consider the rates and charges of the utility beyond the territorial boundaries of their municipality. PURA § 22. The city council members who enact an ordinance fixing utility rates within and without the municipal limits will be responsible to the *city residents* who elected them. Hence, the ballot box is available to *citizens of the municipality* who are aggrieved by the ordinance. Lacking a provision such as PURA § 26(c), no corresponding recourse would be available to nonresident ratepayers of a municipally-owned electric utility.

The dual treatment of retaining local control and limited Commission review was,

however, not completed without compromise. The Senate version of the definitional provision of PURA § 3 was initially drafted to allow regulation of municipally-owned utilities by the Commission. *See* Tex.S.B. 42 § 3(d), 64th Leg., Reg.Sess. (1975) and Tex.S.B. 42, Senate Committee Substitute # 3, § 3(d), 64th Leg., Reg.Sess. (1975). The House version of the bill denoted in H.B. 433, 64th Leg., Reg.Sess. (1975), however, reached a different result; it defined "public utility" under PURA to include all utility suppliers *except* municipally-owned systems. Considering the alternate proposals, senators, in conference, raised the issue of ratepayers outside the city limits who would be unable to exert influence on a city council setting electric rates for the municipally-owned system. *See* Transcript on Conference Committee Deliberations on the Public Utilities Regulatory Act (Tex.H.B. 819, 64th Leg., Reg. Sess. Part I, June 1, 1975, at 7–8).

In an attempt at compromise, the suggestion was made that if municipally-owned utilities were not included within the general definition of "utility," then some "safety valve" must be given to those people being served outside the municipal limits. Transcript on Conference Committee Deliberations, *supra* at 19. It appears that this suggestion was in fact hammered out and now forms the basis of PURA § 26(c). Thus, although the House language in H.B. 433 was retained in the final draft and passed in PURA, provision was made in PURA § 26(c) for those ratepayers outside cities to appeal rates and services provided by municipally-owned utilities. The fact that the drafters intended this resulting scheme is apparent by the fact appeals for ratepayers *inside* city limits were specifically denied. PURA § 20 provides:

> Nothing in this article shall be construed to confer on the commission power or jurisdiction to regulate or

---

**2.** The Legislature has given municipalities the authority to set electric rates free from regulation by the Commission in all but three instances: (1) following appeal of the rates of a municipally-owned utility by ratepayers *outside* the city limits; (2) upon the expansion of a city's retail utility system to an area served by another retail

public utility, and (3) in certain reporting and recordkeeping requirements. *See* Tex.Rev.Civ. Stat.Ann. art. 1446c, §§ 26(c), 49(a) & 50(2), 27 (Supp.1986); Pleitz & Little, *Municipalities and the Public Utility Regulatory Act,* 28 Baylor L.Rev. 977, 980–81 (1976).

*supervise the rates or service of any utility owned and operated by any municipality within its boundaries* either directly or through a municipally owned corporation, or to affect or limit the power, jurisdiction, or duties of the municipalities that have elected to regulate and supervise public utilities within their boundaries, except as provided in this Act. (emphasis added).

This language is significant in itself since as noted earlier, the proposed Senate bill treated municipal utilities for rates, services, and appeals the same as privately-owned utilities. *See generally* Hopper, *A Legislative History of the Texas Public Utility Regulatory Act of 1975*, 28 Baylor L.Rev. 777, 812–13 (1976).

As the legislative history indicates, and the City of Austin concedes, PURA § 26(c) was enacted to authorize appeals to the Commission by nonresident ratepayers of municipally-owned utilities. The Texas Supreme Court has recently interpreted the legislative history in an analogous manner in *City of Sherman, supra* at 685.[3] The City of Austin's position is, however, that the Legislature in its hasty last minute enactment of PURA failed to promulgate standards to govern nonresident appeals, or more specifically to affirmatively indicate that PURA §§ 37–47 standards for ratemaking would apply. The City maintains that the only ratemaking guidelines contained in PURA, *i.e.,* Article VI standards (PURA §§ 37–47), cannot be used because the language in those provisions uses the terms "public utility" and "utility" which PURA § 3(c) defines as excluding all municipally-owned utilities.

We reject the City's arguments for the following reasons. In construing statutes, if the legislative intent is clear but the language used will not produce that result, and in fact will produce an unreasonable result, courts should construe the statute to produce a reasonable and intended result. In *City of Coahoma, supra,* the Texas Supreme Court held that the term "public utility" in PURA § 53 must be construed to include municipally-owned utilities, despite the definitions in PURA §§ 3(c) and 49. The Court concluded that it would be unreasonable to exclude municipally-owned utilities from the scope of the term "public utility" in PURA § 53 because of the result that would occur if municipally-owned utilities were not included—namely that cities would be deprived of the protection from encroachment afforded public utilities. In this regard the Court explained:

> Because the language of the statute is of doubtful meaning, and the above construction unreasonable, we hold that the term "public utility" used in Section 53 includes "retail public utility" as defined in Section 49(a).

*City of Coahoma, supra* at 491.[4] PURA § 53 does not even *mention* the phrase "municipally-owned utility," nonetheless, the Texas Supreme Court redefined the term "public utility" for PURA § 53 purposes in order to effectuate the Legislature's intentions.

A similar approach was utilized in *San Antonio Independent School District v. City of San Antonio*, 614 S.W.2d 917 (Tex. Civ.App.1981, writ ref'd n.r.e.). The City of San Antonio argued that PURA § 48[5]

---

**3.** The *Sherman* court noted:

"... the very issue of continued city jurisdiction versus PUC jurisdiction over ratepayers of municipally-owned water and electric utilities who live outside municipal limits was thoroughly discussed by the conference committee members who drafted the final version of the Act. They decided to allow cities to retain original jurisdiction over municipal utilities' nonresident ratepayers, but granted those ratepayers the right to appeal any decision of a city governing body affecting the services of such utilities." *City of Sherman, supra* at 684.

**4.** "Retail public utility" is defined in PURA § 49(a) as including "any person, corporation, water supply or sewer service corporation, *municipality....*" (emphasis added).

**5.** PURA § 48 provides: "No payments made in lieu of taxes by a public utility to the municipality by which it is owned may be considered an expense of operation for the purpose of determining, fixing, or regulating the rates to be charged for the provision of utility service to a school district or hospital district. No rates received by a public utility from a school district or hospital district may be used to make or to cover the cost of making payments in lieu of

was inapplicable to it because no municipally-owned utility is a "public utility." This argument was also founded on the definitions of "public utility" and "utility" contained in PURA § 3(c) as well as PURA § 3(o), and the use of the term "public utility" in PURA § 48. The court rejected this contention and noted:

> The plain language of Section 48 concerns public utilities owned by municipalities. By its terms Section 48 clearly applies to the City of San Antonio unless Section 48 is dependent upon the definition section of 1446c for meaning. We hold it does not. ... if the definitions, as urged by City of San Antonio, were applicable to Section 48, a public utility could not be owned by a municipality. If this be true, Section 48 would have no meaning. It would be totally void and inoperable for any purpose. We refuse to hold that the legislature has done such an absurd thing.

*City of San Antonio, supra* at 919.

In *City of Coahoma,* and *City of San Antonio,* as well as *City of Sherman,* the judicial analysis utilized compared the result which would be reached if the statute were applied as written, as opposed to a recommended reinterpretation. The Supreme Court in *City of Sherman* held that the Commission retained no authority over the services of municipally-owned utilities outside municipal limits under PURA § 17(e), because that provision of PURA dealt only with utilities, and PURA § 3(c) expressly excludes municipally-owned utilities from the definition of "utility." The decision however was not solely premised on a literal reading of the language in PURA § 17(e).

The Court of Appeals opinion in *City of Sherman,* which judgment was ultimately reversed, must be examined to understand the basis of the Texas Supreme Court opinion on appeal. PURA § 17(e) provides in part:

> The commission shall have exclusive original jurisdiction over electric, water, and sewer utility rates, operations, and services not within the incorporated limits of a municipality....

The Court of Appeals strictly interpreted the provision to include all "utility" services, whether municipally-owned or not, which were outside the city limits. On rehearing, the City of Sherman urged that this strict interpretation not only was contrary to PURA § 3(c), but also created a situation under PURA § 26(c) that vested both original and appellate jurisdiction with the Commission over municipal services to ratepayers outside the city limits.

The City of Sherman's argument was ultimately accepted by the Supreme Court on the basis that there was a legislative intent to allow the Commission appellate jurisdiction only in circumstances circumscribed in PURA § 26(c). Any more specific sectional interpretations were unwarranted since by facially reconciling PURA § 17(e) and § 26(c), it was apparent that "utility" in PURA § 17(c) excluded municipally-owned utilities consistent with the definition of utility provided in PURA § 3(c). Consequently, the Supreme Court was construing the language based on legislative intent to produce a reasonable result.

■ We are convinced that the Legislature intentionally sought to provide a "safety valve" for nonresident ratepayers by which they can seek review over the rates imposed on them by municipally-owned utilities. Inherent in the fact that the Legislature intended such review is the presumed fact that the necessary provisions for review exist which will effectuate the purposes of PURA § 26(c). To suggest as the City does, that the Legislature purposefully enacted a hollow statute which must await further legislative remodeling is not in keeping with the rules of statutory construction above enumerated, especially given the availability of a reasonable construction.[6] Hence, we conclude that PURA

---

taxes to the municipality by which the public utility is owned."

6. The City also suggests that if the Commission is to review rates under PURA § 26(c), it should

use the common law standards, rather than hear the case de novo applying the ratemaking standards in PURA Article VI. *See e.g., City of Texarkana v. Wiggins,* 151 Tex. 100, 246 S.W.2d

§ 26(c) authorizes appeals by nonresident ratepayers of a municipally-owned utility and the standards which govern that review are set forth in PURA §§ 37–47.

The legislative history indicates a belief by several drafters that municipally-owned utilities and privately-owned utilities could be treated the same for ratemaking review purposes. This is evident from the fact that in the initial Senate bill drafts, alluded to earlier, both types of utilities were included within the Commission's jurisdiction. We also decline to accept the City's argument that the standards in PURA §§ 37–47 cannot be fashioned to provide a ratemaking review framework for rates set by municipally-owned utilities, since the standards are not the type applicable to a non-investor-owned utility. Electric utilities owned by river authorities, which like municipalities are political subdivisions of the state, are presently regulated as *public* utilities under PURA Article VI standards. Hence, the standards are the type that can properly and *reasonably* be used to set rates of electric companies which are municipally-owned. Appellants' points of error three through six are sustained.[7]

### PURA § 26(e)

Having concluded the district court erred in declaring PURA § 26(c) unconstitutional, we must address that portion of the trial court's judgment which defines the scope of review in a PURA § 26(c) appeal. PURA § 26(e) provides on its face that the Commission shall hear "such appeal de novo." The City argues that the language added to PURA § 26(e) in 1983 indicates a legislative intent that PURA § 26(e) *only* applies to appeals taken under PURA §§ 26(c) and (b). We disagree.

Before the 1983 amendments, PURA § 26(e) provided:

> The Commission or railroad commission shall hear such appeal de novo and by its final order shall fix such rates as the municipality should have fixed in the ordinance from which the appeal was taken.

Tex.Rev.Civ.Stat.Ann. art. 1446c, § 26(e), *amended* by Acts 1983, 64th Leg., p. 1222, ch. 263 § 26 effective Sept. 1, 1983. The present provision provides:

> The commission shall hear such appeal de novo *based on the test year presented to the municipality* and by its final order shall fix such rates as the municipality should have fixed in the ordinance from which the appeal was taken. In the event that the commission fails to enter its final order: (1) for proceedings in which similar relief has also been concurrently sought from the commission under its original jurisdiction, within 120 days from the date such appeal is perfected or the date upon which final action must be taken ..., or (2) in all other proceedings, within 185 days from the date such appeal is perfected, the schedule of rates proposed by the *utility* shall be deemed to have been approved by the commission ... (emphasis added).

Unlike the previous provisions discussed, there is apparently either little or no legislative history to guide our interpretation. Consequently, we must interpret the statute in a manner to produce a consistent, reasonable result. *See City of Coahoma, supra.* As originally written, PURA § 26(e) referred to all appeals taken under PURA § 26. The changes attempt to clarify ambiguous situations. The Commission

622 (Tex.1952) (nonresident consumers of a municipally-owned water and sewer system sought to enjoin the city from charging nonresidents higher water and sewer rates than those paid by persons residing within the corporate limits of the city). We disagree. Not only does the cited authority pre-date the enactment of PURA, but the City's position contradicts the notion that the expertise of the Commission, which PURA seeks to utilize, lies in the area of setting rates according to the criteria in PURA Article VI. It is unreasonable to assume that the Legislature vested the Commission with authority to review

rates, to the exclusion of courts, when the standard was one which the courts would be more familiar in using. Moreover, it is unreasonable that the Legislature, by its silence, intended the Commission to apply common law standards when PURA contains ten sections detailing how rates should be determined.

7. PURA §§ 16(c), 17(d), and 27 are all applicable given a constitutionally valid legislative grant of authority to review and set rates in PURA § 26(c).

must now set rates based only on the data that was or could have been presented to the municipality from which the ordinance was appealed, and not on up-dated data. The other additional language merely sets limits upon the period of time in which the Commission may hear the appeal.

 We do not find that any of the changes made in PURA § 26(e) evidence an intent to entirely change the applicability of PURA § 26(e) to § 26(c) appeals. Moreover, the City does not present a more reasonable explanation. Hence, we conclude that the scope of the Commission's review in a nonresident ratepayer appeal under PURA § 26(c) is by trial de novo. Appellants' last point of error is sustained.

In summary, we have reviewed the legislative history of PURA § 26(c), the purposes for which § 26(c) was designed, the mischief sought to be remedied, and the overall structure of PURA. We have concluded, based upon the rules of statutory construction guiding our review, that PURA § 26(c) is constitutional since the legislatively delegated authority accorded the Commission in such appeals is to be exercised consistent with the standards in PURA Article VI (§§ 37–47). In order to effectuate the end sought to be achieved by PURA § 26(c), we hold that for purposes of PURA § 26(c) appeals, both "utility" and "public utility" as those terms are used in PURA Article VI encompass municipally-owned utilities, and that PURA § 3(c) is not to be accorded determinative weight. We further hold that appeals under PURA § 26(c) are to be heard de novo before the Commission consistent with PURA § 26(e).

The judgment of the district court is reversed and judgment here rendered that PURA § 26(c) is constitutional; that the Public Utility Commission has jurisdiction over nonresident ratepayer appeals under PURA § 26(c); that the legislatively delegated ratemaking authority accorded the Commission in such appeals is to be exercised consistent with the standards enumerated in PURA Article VI and the corresponding Commission substantive rules;

and that the Commission shall hear appeals under PURA § 26(c) de novo.