TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00785-CV






Texas Department of Insurance, Division of Workers' Compensation, formerly known as
Texas Workers' Compensation Commission, Appellant


v.


Lumbermens Mutual Casualty Company; Petroleum Casualty Company; State Office of
Risk Management; International Paper, Self-Insured; Dallas Fire Insurance Company and
Harrison County, Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. GN401643, HONORABLE DARLENE BYRNE, JUDGE PRESIDING



 




O P I N I O N



 Texas Department of Insurance, Division of Workers' Compensation (the Division) (1)
appeals from an order, entered by the trial court in a declaratory judgment action brought by
Lumbermens Mutual Casualty Company, Petroleum Casualty Company, State Office of Risk
Management, International Paper Company, Dallas Fire Insurance Company, and Harrison County
(collectively, the carriers), (2) declaring that the issuance of two advisories by the Division constituted
an invalid attempt at ad hoc rulemaking and that application of the advisories is an ultra vires act,
and enjoining the Division from further application and enforcement of the advisories. The Division
argues that the trial court lacked subject matter jurisdiction, and that even if the court had
jurisdiction, the advisories are not rules and issuing and applying them is within the Division's
statutory authority. We affirm the trial court's judgment. 


BACKGROUND


 The Division administers the Texas Workers' Compensation Act. Under the Act, an
injured worker may become entitled to receive impairment income benefits, which are based on an
impairment rating assigned by a physician. Tex. Lab. Code Ann. § 408.121 (West 2006). Also, if
an injured worker is assigned an impairment rating of fifteen percent or higher, she may become
eligible for supplemental income benefits after the expiration of impairment income benefits. Id.
§ 408.142 (West 2006). 

 The Division is required to use the Guides to the Evaluation of Permanent
Impairment, published by the American Medical Association (AMA), in determining the existence
and degree of an injured worker's permanent impairment. Id. § 408.124 (West 2006). The
legislature granted the Division discretion to adopt the fourth edition of the Guides, id. § 408.124(c),
which it did on June 7, 2000, after public notice and comment. See 28 Tex. Admin. Code § 130.1(c)
(2006). The fourth edition of the Guides must be used for impairment ratings issued on or after
October 15, 2001. Id. § 130.1(c)(2)(B)(I). 

 The principal methodology found in the fourth edition of the Guides is its injury
model, which uses objectively verifiable evidence to place patients into one of eight diagnosis-related estimate (DRE) categories. The dispute in this case concerns the proper standard for
assessing the DRE IV category for the lumbosacral spine in the context of spinal fusion surgeries. 
The Guides requires either loss of motion segment integrity or a structural inclusion for a patient to
be given a rating of DRE IV for the lumbosacral spine.

 The Guides explains loss of motion segment integrity:


A motion segment of the spine is defined as two adjacent vertebrae, an intercalated
disk, and the vertebral facet joints. Loss of motion segment or structural integrity is
defined as abnormal back-and-forth motion (translation) or abnormal angular motion
of a motion segment with respect to an adjacent motion segment.



 For a patient to be diagnosed with loss of motion segment integrity for the
lumbosacral spine, the Guides requires that flexion and extension roentgenograms (x-rays) taken
before the spinal fusion surgery establish translation of at least five millimeters of one vertebra on
another or angular motion at a motion segment that is eleven degrees more than at an adjacent
motion segment. Loss of motion segment integrity is frequently treated by performing spinal fusion
surgery, which involves removing the disk between two vertebrae and fusing those vertebrae
together. In some instances, more than one disk is removed and more than two vertebrae are fused
together.

 The structural inclusions for the DRE IV category for the lumbosacral spine are: "(1)
Greater than 50% compression of one vertebral body without residual neurologic compromise; [and]
(2) multilevel spine segment structural compromise, as with fractures or dislocations, without
residual neurologic motor compromise."

 The Division's Medical Advisor, Dr. William Nemeth, testified that instances where
doctors performed spinal fusion surgeries but did not take preoperative flexion and extension x-rays
created "a big hole in the system," because confusion existed in the medical community regarding
how to rate those patients. Because of this confusion, Nemeth drafted Advisory 2003-10, which was
issued by the Division's Executive Director Richard Reynolds on July 22, 2003. Nemeth also
drafted Advisory 2003-10B, which the executive director issued on February 24, 2004. The second
advisory added an additional section to the first. The advisories attempt to eliminate the "big hole
in the system" by providing an alternative standard for assessing a DRE IV category when there are
no preoperative x-rays.

 The controversial provision included in both advisories states that "[i]f preoperative
x-rays were not performed, the rating may be determined using the following criteria: . . . b. 
Multilevel fusion meets the criteria for DRE Category IV, Structural Inclusions, as this multilevel
fusion is equivalent to 'multilevel spine segment structural compromise' per DRE IV." The
advisories also state that a one-level fusion meets the criteria for DRE II as a structural inclusion. 

 Nemeth explained at trial that when two or more vertebrae are fused together, the
motion segments above and below the fused vertebrae necessarily move more than they did before
the surgery because of "compensatory motion." "So by definition, at that point, if you didn't have
loss of motion segment integrity before surgery, you have it afterwards," he testified. 

 The carriers base their complaint about the advisories on the statement in the Guides
that "[w]ith the Injury Model, surgery to treat an impairment does not modify the original
impairment estimate, which remains the same in spite of any changes in signs or symptoms that may
follow the surgery and irrespective of whether the patient has a favorable or unfavorable response
to treatment." The carriers' expert witness, Dr. Marc Taylor, testified that under the injury model
of the fourth edition of the Guides, patients may only be rated in the DRE IV category for the
lumbosacral spine because of loss of motion segment integrity or structural inclusions caused by the
underlying injury, not for conditions caused by surgery or other treatment for the underlying injury.

 The carriers argue that the advisories allow doctors to place injured workers in
categories DRE IV and DRE V when the Guides would require them to be placed in DRE II or DRE
III, resulting in increased impairment income benefits. Also, because category DRE III for the
lumbosacral spine translates to a ten percent impairment rating while DRE IV translates to a twenty
percent impairment rating, the advisories allow some injured workers to become eligible for
supplemental income benefits when they would not be eligible under the Guides. 

 Lumbermens Mutual Casualty Company filed suit against the Division seeking (1)
judicial review of a Division decision in a contested case hearing applying the advisories and (2) a
declaratory judgment under the Administrative Procedure Act (APA), see Tex. Gov't Code Ann.
§ 2001.038 (West 2000), and the Uniform Declaratory Judgments Act (UDJA), see Tex. Civ. Prac.
& Rem. Code Ann. § 37.004 (West 1997), that the advisories are inconsistent with Division rule
130.1 and that their issuance and application is outside the Division's statutory authority. The trial
court severed the suit for judicial review of the contested case hearing, and the other carriers then
intervened in the declaratory judgment action. After a trial, the district court entered judgment
declaring that the issuance of the advisories was an invalid attempt at ad hoc rulemaking and that the
application of the advisories is an ultra vires act, and enjoining the Division from applying the
advisories.

 The Division appeals from the declaratory judgment, arguing that the trial court
lacked subject matter jurisdiction under both the APA and the UDJA, and that the Division is
immune from suit because of sovereign immunity. The Division contends that even if the court had
jurisdiction, its decision was improper because the advisories are not rules and applying them is
within the Division's statutory authority because the advisories are consistent with the Guides. 

DISCUSSION


Subject Matter Jurisdiction

 In its second issue, the Division argues that the trial court lacked jurisdiction under
the UDJA. The Division contends that because the carriers may seek judicial review of contested
case hearings where the Division has applied the advisories, see Tex. Lab. Code Ann. § 410.251
(West 2006), the UDJA does not confer jurisdiction to review the decisions in those same hearings
through a declaratory judgment action. The Division further asserts that the carriers did not allege
a valid independent basis for jurisdiction under the UDJA.

 A plaintiff who sues the State must establish the State's consent to suit. Texas
Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). Otherwise,
sovereign immunity from suit defeats a trial court's subject matter jurisdiction. Id. Whether a trial
court has subject matter jurisdiction is a question of law we review de novo. Texas Dep't of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). If jurisdiction was proper under the
UDJA, the suit was not barred by sovereign immunity. See Texas Mun. Power Agency v. Public Util.
Comm'n, 100 S.W.3d 510, 516 (Tex. App.--Austin 2003, pet. denied).

 The UDJA does not confer jurisdiction on trial courts; rather, it is merely a procedural
device for deciding cases already within a court's jurisdiction. State v. Morales, 869 S.W.2d 941,
947 (Tex. 1994). When a statute provides a specific method for attacking an agency order, a
declaratory judgment action directed at that order will not lie. Young Chevrolet v. Texas Motor
Vehicle Bd., 974 S.W.2d 906, 911 (Tex. App.--Austin 1998, pet. denied).

 The Division argues that because the carriers are permitted to seek judicial review of
hearing decisions applying the advisories under section 410.251 of the labor code, they are barred
from bringing declaratory judgment actions under the UDJA challenging the same decisions. The
Division asserts that because the language of the advisories is permissive, they may not be
challenged as rules in suits for declaratory judgment. The Division insists that if some of its appeals
panels have held the advisories to be mandatory, the improper application of the advisories can only
be challenged in suits for judicial review of those specific contested case hearings.

 The Division misconstrues the carriers' position. While the carriers do object to the
appeals panels' holdings regarding the advisories, the carriers also complain of the issuance of the
advisories. The carriers contend that the fourth edition of the Guides is the only permissible source
for determining impairment ratings in Texas. Tex. Lab. Code Ann. § 408.124; 28 Tex. Admin. Code 
§ 130.1(c); Texas Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 526 (Tex. 1995) (discussing
workers' compensation laws in other states and concluding that "[o]ur Act, however, does not allow
such flexibility, as it specifically requires all determinations of impairment to be made under the
Guides"). The carriers assert that because the advisories allow doctors to take spinal fusion surgeries
into account when assigning impairment ratings, and because the fourth edition of the Guides
expressly forbids taking surgery into account when determining impairment using the injury model,
the advisories are inconsistent with the Guides and thus their issuance was outside the Division's
authority. The carriers' argument does not rest on the advisories being mandatory, but rather has the
same force whether the advisories allow consideration of surgery or require it. Because the carriers
challenge the issuance of the advisories, we reject the Division's argument that the availability of
judicial review of contested case hearings under section 410.251 of the labor code bars the carriers'
UDJA action.

 The Division also argues that the carriers did not allege a valid independent basis for
jurisdiction to support their UDJA suit. However, as this Court has held, a UDJA action "to interpret
the scope of an agency's statutory authority . . . is sufficient to invoke the trial court's jurisdiction
and to waive sovereign immunity." Texas Mun. Power Agency v. Public Util. Comm'n, 100 S.W.3d
510, 516 (Tex. App.--Austin 2003, pet. denied) (citing Public Util. Comm'n v. City of Austin, 728
S.W.2d 907, 910-11 (Tex. App.--Austin 1987, writ ref'd n.r.e.)); see also Texas Dep't of Pub. Safety
v. Moore, 985 S.W.2d 149, 154 (Tex. App.--Austin 1998, no pet.). As discussed above, the carriers
argue that issuance of the advisories was outside the Division's authority. Accordingly, we hold that
the trial court had jurisdiction under the UDJA and overrule the Division's second issue.

 In its first issue, the Division argues that the trial court lacked subject matter
jurisdiction under the APA because the advisories in question are not rules. The carriers brought suit
under both the APA and the UDJA. The trial court held that it had subject matter jurisdiction,
although it did not specify on which basis. We need not address whether the advisories are rules as
defined in the APA because we have held that the trial court had jurisdiction over the declaratory
judgment action pursuant to the UDJA.


Invalid Ad Hoc Rulemaking and Ultra Vires Application 


 In its third and fourth issues, the Division contends that the trial court erred by
declaring that the Division's issuance of the advisories constituted an invalid attempt at ad hoc
rulemaking and that the application of the advisories is an ultra vires act, and enjoining any further
use of the advisories by the Division.

 First, the Division argues that the advisories in question could not be ad hoc rules
because they are not rules within the definition in the APA. However, ad hoc "rules" are, by
definition, not rules. An ad hoc rule is an agency statement that interprets, implements, or prescribes
agency law or policy, but is not the product of formal rulemaking procedures under the APA. West
Tex. Utils. Co. v. Office of Pub. Util. Counsel, 896 S.W.2d 261, 272 (Tex. App.--Austin 1995, no
writ); Texas Ass'n of Long Distance Tel. Cos. v. Public Util. Comm'n, 798 S.W.2d 875, 886 (Tex.
App.--Austin 1990, writ denied). The Division admits in its briefs and admitted at trial that the
advisories were not the product of formal rulemaking procedures and that they interpret law or
policy. Therefore, the trial court did not err by declaring that the advisories are ad hoc rules.

 Next, the Division argues that the trial court erred by declaring that the advisories are
invalid and that applying them is an ultra vires act, and by enjoining their further use. The Division
insists that the advisories merely interpret the Guides and do not modify or contradict the AMA's
methodology. The Division points to language in the Guides stating that doctors' judgment and
experience must be used in assessing impairment ratings. The Division argues that competent
doctors often disagree about how to assess impairment ratings, and that the advisories were
promulgated to address confusion that existed in the field and merely provide a suggested approach
that doctors "may wish to consider."

 Dr. Nemeth's testimony indicated that there was considerable confusion in the field
regarding assigning impairment ratings to patients who had undergone spinal fusion surgery but
lacked preoperative flexion and extension x-rays. It is also arguably medically sound to define
structural inclusions for the lumbosacral spine to include spinal fusions; the fifth edition of the
Guides, not yet adopted in Texas, takes this approach. While it is doubtless correct that medical
judgment and experience are necessary to assign impairment ratings to injured workers, the Guides
unambiguously states that "[w]ith the Injury Model, surgery to treat an impairment does not modify
the original impairment estimate, which remains the same in spite of any changes in signs or
symptoms that may follow the surgery and irrespective of whether the patient has a favorable or
unfavorable response to treatment." Thus, under the injury model of the Guides, doctors may not
use their medical judgment or experience to take surgery or the effect of surgery into account when
assigning impairment ratings. By issuing and applying advisories that allow doctors to do just that,
the Division has acted outside its statutory authority because the fourth edition of the Guides is the
only permissible source for determining impairment ratings within the Texas workers' compensation
system. Tex. Lab. Code Ann. § 408.124; 28 Tex. Admin. Code § 130.1(c); Texas Workers' Comp.
Comm'n v. Garcia, 893 S.W.2d 504, 526 (Tex. 1995) (discussing workers' compensation laws in
other states and concluding that "[o]ur Act, however, does not allow such flexibility, as it specifically
requires all determinations of impairment to be made under the Guides"). 

 Although the current statutory scheme may warrant revision or amendment, the
Division is not authorized to suggest any alternative criteria for determining impairment ratings. Cf.
Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex., Inc., 997 S.W.2d 651,
658 (Tex. App.--Austin 1999, pet dism'd w.o.j.) ("[T]he Commission has adopted guidelines for
enforcing the Penal Code that appear contrary to the plain wording of the statute.").

 The Division makes some arguments in its briefs suggesting that the advisories
contemplate use of the range-of-motion model, an alternate methodology under the fourth edition
of the Guides which permits taking surgery into account in assigning impairment ratings. However,
the advisories clearly refer to the injury model, even quoting its definitions of structural inclusions. 
Furthermore, the fourth edition of the Guides states that the injury model is the preferred
methodology and that the range-of-motion model may only be resorted to in order to differentiate
between two categories suggested by the injury model or if the injury in question is not covered by
the injury model. The advisories do not take either approach. We hold that because the advisories
contradict the fourth edition of the Guides, and thus contradict labor code section 408.124 and
Division rule 130.1, the trial court did not err by declaring that their issuance was invalid and that
their application is an ultra vires act, and enjoining their continued use.


CONCLUSION


 Having disposed of all the Division's points of error, we affirm the judgment of the
trial court.

 

 ______________________________

 Bea Ann Smith, Justice

Before Justices B. A. Smith, Pemberton and Waldrop

Affirmed

Filed: October 24, 2006
1. Effective September 1, 2005, the legislature dissolved the Texas Workers' Compensation
Commission and created the Division of Workers' Compensation within the Texas Department of
Insurance. Act of June 1, 2005, 79th Leg., R.S., ch. 265, § 8.001, 2005 Tex. Gen. Laws 469, 607. 
For convenience, we will refer to the agency as the Division. 
2. Lumbermens Mutual Casualty Company was the plaintiff in the trial court, and the other
carriers intervened.