# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00216-CV

**Vista Health Plan, Inc. and Integranet Provider Organization, Inc., Appellants**

**v.**

**Texas Health and Human Services Commission, Texas Department of Human Services, Texas Department of Health, and Texas Rehabilitation Commission, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. GN1-03928, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from a grant of a plea to the jurisdiction, which stems

from a dispute about the administration of the state's Medicaid managed care program.[1]  *See* Tex.

Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2004) (allowing interlocutory appeals

---

[1] Medicaid is a cooperative program between the federal government and the states whereby the federal government agrees to pay a specified percentage of a state's expenditure for the provision of health care to needy individuals if the state agrees to establish a Medicaid plan satisfying certain federal requirements.  *See* 42 U.S.C.A. §§ 1396-1396v (West 2003).  Texas's Medicaid program includes a managed care program—a "health delivery system in which the overall care of a patient is coordinated by or through a single provider or organization"—which is known as State of Texas Access Reform, or "STAR."  1 Tex. Admin. Code § 353.402(25) (2004); *see also id.* §§ 353.2(13), .402(41) (2004).

from order granting plea to jurisdiction). Appellee the Texas Department of Health[2] contracted with

HMO Blue, Inc. ("Blue") to provide comprehensive health care services to qualified Medicaid-

eligible recipients. Blue, in turn, subcontracted with appellants Vista Health Plan, Inc. and Integranet

Provider Organization, Inc. (collectively, "Vista"), to provide Medicaid managed care services to

Blue's members. After a contract dispute arose between Blue and Vista about Vista's contractual

liability for some of Blue's members, Vista sued Blue for breach of contract and both Blue and the

state agencies for declaratory relief. Vista sought a judgment declaring erroneous the state agencies'

interpretation of their rules and applicable statutes, which were pivotal to its dispute with Blue. The

parties filed competing motions for summary judgment; the state agencies also filed a plea to the

jurisdiction. The trial court granted Blue's motion for summary judgment and the state agencies'

plea to the jurisdiction. Only the trial court's grant of the plea to the jurisdiction is before us on

appeal.[3] We hold that no controversy existed between Vista and the state agencies once the court

granted summary judgment in favor of Blue. The trial court therefore properly refused to exercise

jurisdiction in the declaratory-judgment action against the state agencies. Accordingly, we will

affirm the trial court's order granting the state agencies' plea to the jurisdiction and dismissing

Vista's claims against them.

---

[2] The Texas Department of Health, the Texas Department of Human Services, and the Texas Rehabilitation Commission were all agencies within the Texas Health and Human Services Commission. Tex. Gov't Code Ann. § 531.001 (West Supp. 2004). The agencies have since been abolished, and their powers, duties, and functions have been transferred to various other agencies within the commission. Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 1.26, 2003 Tex. Gen. Laws 611, 641. For convenience, we will refer to the agencies and the commission collectively as the "state agencies," unless our discussion requires us to distinguish among them.

[3] The summary judgment is not yet a final judgment because some of Vista's claims against Blue, which are not germane to this appeal, were not resolved by the summary judgment and remain pending in the trial court.

**BACKGROUND**

The underlying dispute in this case involves the Texas Medicaid program and how it is funded. The department of health contracted with Blue, as a managed care organization, to provide comprehensive health care services to Medicaid-eligible recipients under the state's STAR program. Blue, in turn, contracted with Vista to provide Medicaid services to Blue's members. Under the terms of Blue's subcontract with Vista, Vista was paid on a per-patient or "capitated" basis, defined in the contract as "a payment system which pays to Medical Group [Vista] a fixed actuarially determined amount per month . . . in lieu of fee-for-service payments."[4] Blue adjudicated and processed the Medicaid claims and informed Vista of the amount of money needed to pay those claims. Vista ensured that an appropriate amount of money was available in a designated bank account for Blue to pay the medical providers.

In October 2001, a dispute arose between Blue and Vista over whether Vista was legally obligated to pay the claims of a special class of patients—newborn children weighing 1,200 grams or less at birth. Vista stopped providing funds for those patients and accused Blue of paying between $10,000,000 and $12,000,000 in claims for ineligible Medicaid recipients. According to

---

[4] Under a "capitated" payment system, the health care provider is paid a fixed, pre-determined amount per patient, which does not vary no matter how much care the patient requires. Allison Overbay & Mark Hall, *Insurance Regulation of Providers that Bear Risk*, 22 Am. J. L. & Med. 361, 363 (1996). Capitated payment arrangements are termed "full risk"; that is, Vista bears the risk that the capitated payment received for an insured member may be insufficient to cover that member's medical needs for any given month. David M. Studdert, *Direct Contracts, Data Sharing and Employee Risk Selection: New Stakes for Patient Privacy in Tomorrow's Health Insurance Markets*, 25 Am. J. L. & Med. 233, 236 (1999).

Vista, these children should have been covered by either Medicare[5] or another type of Medicaid program—a fee-for-service program,[6] as opposed to the managed care program Vista contracted to provide. In the alternative, Vista contended that the capitated method of payment was not reasonable for the medical care required by premature infants and therefore violated federal and state law, which mandate that reimbursement rates be based on sound actuarial principles. The state agencies were implicated, according to Vista, because they were responsible for administering the Medicaid program in Texas and for determining eligibility to receive Medicaid coverage.

Vista sued Blue for breach of contract and both Blue and the state agencies for declaratory and injunctive relief. Vista sought a declaration that (1) the state agencies' interpretation and application of law as to the eligibility of newborn infants who are eligible for Medicaid was invalid; (2) such an interpretation impaired Vista's contract with Blue; (3) Medicaid was the payor of last resort; (4) assuming the contracts did impose the risk of providing health care to these newborn infants, the original capitation rates were unreasonable and actuarially unsound because they did not factor in the increased cost of caring for certain newborns; and (5) Blue's contract with the state and Blue's subcontract with Vista violated federal law. Essentially, Vista sought a declaration that the Medicaid statutes and rules, if properly interpreted, absolved it from paying the

---

[5] Medicare is administered by the federal government and provides health insurance for the aged and disabled. *See* 42 U.S.C.A. §§ 1395-1395ggg (West 2003).

[6] Under a "fee-for-service" arrangement, a health care provider is reimbursed for all procedures that are provided, at a price controlled by the health care providers. Andrew Ruskin, *Capitation: the Legal Implications of Using Capitation to Affect Physician Decision-making Processes*, 13 J. Contemp. Health L. & Pol'y 391, 392-93 (1997).

4

disputed claims. Blue counter-claimed for recovery of the funds it expended as a result of Vista's alleged breach of contract.

All parties moved for summary judgment based on their interpretation of the statutes and rules governing Medicaid. The state agencies also filed a plea to the jurisdiction, claiming Vista's request for declaratory relief was insufficient to confer jurisdiction on the court, Vista's claims were barred by sovereign immunity, and its claims were not yet ripe. The trial court granted Blue summary judgment on all but one issue, which is not germane to this appeal, and granted the state agencies' plea to the jurisdiction without specifying the basis for its decision. This appeal concerns only the trial court's grant of the plea to the jurisdiction.

## DISCUSSION

### *Standard of Review*

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 525 (Tex. App.—Austin 2002, pet. denied). Because subject-matter jurisdiction presents a question of law, we review the trial court's decision de novo. *Mayhew*, 964 S.W.2d at 928; *Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.).

5

*The Underlying Dispute*

As a preliminary matter, it is helpful to outline the underlying dispute between Vista and Blue, as that dispute affects our disposition of Vista's claims against the state agencies.[7] The crux of Vista's suit concerns the interpretation of certain Medicaid rules and select portions of its contract with Blue. An amendment to the agreement between Vista and Blue provides in pertinent part: "At birth, newborns are assigned to the managed care organization (risk group) of the mother. The mother's risk group will be financially responsible for all medical expenses of the newborn until hospital discharge, or until the newborn is no longer eligible for the STAR program."

Similarly, the state agencies' applicable rules provide that "newborn children born to mothers who are receiving Medicaid coverage at the time of birth" are eligible for Medicaid coverage until the child's first birthday or until the mother relinquishes her parental rights, 40 Tex. Admin. Code § 4.1004 (2003),[8] and "Medicaid eligibility for children certified under the newborn children provision must begin on the child's date of birth." *Id*. § 4.1012 (2003). According to Vista, these rules must be read in conjunction with section 15.215, which states that "Medicaid is usually the payor of last resort," *id.* § 15.215 (2003), and section 15.200, which provides that for individuals who are entitled to Medicare and Medicaid coverage, Medicare is the payor of first resort, *id.* § 15.200 (2003); *see also* Tex. Hum. Res. Code Ann. § 32.050(b) (West Supp. 2004) (department

---

[7] We emphasize, however, that we express no opinion on the merits of the underlying dispute or on the correctness of the trial court's summary judgment. Those are not before us on appeal. The only issue we must decide in this case is whether the trial court erred in granting the state agencies' plea to the jurisdiction.

[8] For convenience, we cite to the 2003 version of the administrative code, as this was the version relied upon by the parties in their briefs.

shall analyze claims submitted for payment under Medicaid to ensure that payment is first sought under Medicare to extent allowed by law).

Vista's position is that federal rules mandate that children born weighing 1,200 grams or less are presumptively eligible for the federal Medicare program, and therefore because the state's Medicaid program is a payor of last resort, neither Blue nor Vista should be responsible for these newborns' medical fees. Vista cites federal regulations in arguing that newborn infants weighing less than 1,200 grams are presumptively disabled and their medical expenses should therefore be covered by the federal Medicare program rather than state Medicaid. *See* 20 C.F.R. § 416.926a(m)(7) (2004).

The state agencies and Blue responded in the trial court that under the federal regulations, premature infants weighing less than 1,200 grams are presumptively disabled and may be entitled to supplemental security income ("SSI") but not Medicare benefits, and Vista has confused the two federal programs. Moreover, those infants that are eligible for SSI are automatically entitled to state Medicaid. *See* Tex. Hum. Res. Code Ann. § 32.025(a) (West Supp. 2004). Thus, these newborns weighing less than 1,200 grams are potentially eligible for state Medicaid coverage under two bases: (1) if they are born to mothers who are receiving Medicaid coverage at the time of birth, and (2) if it is determined that they are eligible for SSI because of a disability. According to the state agencies, there is a difference between these two types of Medicaid eligibility. Newborns born to mothers who are covered by Medicaid and enrolled in STAR are also automatically enrolled in STAR, which Vista has contracted to provide. If those infants are eligible for SSI, however, they receive Medicaid on a fee-for-service basis and are not automatically enrolled

7

in STAR. Because newborn infants must first apply and be approved for SSI, they are not automatically entitled to SSI or Medicaid benefits based on their SSI eligibility. In the meantime, they may receive Medicaid under the first basis, that is, if their mothers are receiving Medicaid at the time of giving birth. Once the infants are approved for SSI, they receive Medicaid based on their SSI eligibility, rather than on their mothers' Medicaid coverage. In other words, the state agencies have enacted a procedure to ensure that these infants are automatically covered by Medicaid if their mothers are covered by Medicaid, until the newborns' SSI eligibility can be determined.

As for the federal Medicare program, which Vista argues also covers newborns weighing less than 1,200 grams, the eligibility requirements are far more stringent. The state agencies and Blue argued that newborn infants weighing less than 1,200 grams are not presumptively eligible for Medicare. If a determination is made that they are eligible, however, federal Medicare is designated as the first payor, and Medicaid is designated as the payor of last resort, under a fee-for-service program. Moreover, these "dual eligible" individuals (that is, those covered by both Medicaid and Medicare) are excluded from the STAR managed care program. Thus, these dual eligible individuals are not covered by the contract between Blue and Vista. In sum, Blue and the state agencies argued that in most cases, newborn infants weighing less than 1,200 grams may be eligible for both SSI and Medicaid benefits, but they are not eligible for Medicare. In those few instances where a child might be eligible for both Medicare and Medicaid, Medicaid is designated as the payor of last resort, and furthermore, those individuals are not included in the STAR program, so they do not receive care through Vista.

Vista also alleged that in enacting rules that allow all newborn infants born to mothers enrolled in STAR to also automatically be enrolled in STAR, the state agencies have violated section 533.0075 of the government code. That statute provides in pertinent part that the state agencies shall temporarily assign Medicaid-eligible newborn infants to the "fee-for-service" component of the Medicaid program for a period not to exceed the earlier of: (a) sixty days, or (b) the date on which the state agencies have completed the newborn's Medicaid eligibility determination. Tex. Gov't Code Ann. § 533.0075(6) (West Supp. 2004). Thus, according to Vista, these newborn infants should be covered by the fee-for-service program for sixty days and should not be enrolled in STAR. Therefore, Vista should not be responsible for providing managed care services to these infants under its contract with Blue.

The state agencies and Blue countered that what the statute says is that a newborn *may be* assigned to the fee-for-service program until the child's Medicaid eligibility is determined. The statute also mandates, however, that the state agencies develop and implement an expedited process for determining eligibility and enrolling newborn infants in managed care plans, such as STAR. *Id*. § 533.0075(4). The state agencies have done just that; they have implemented a procedure to expedite determining the Medicaid eligibility of newborns by automatically enrolling the newborns in their mothers' managed care plan on the date the child is born. Thus, there is no need to enroll the infant in the temporary fee-for-service program, as the children's Medicaid eligibility is determined from the date of birth. The state agencies argued that their procedure of enrolling newborn infants in the STAR program from the date of their birth is completely consistent with the statute.

9

Finally, Vista argues that the state agencies and Blue have violated federal law in administering the STAR program by failing to set rates on an actuarially sound basis as required by 42 U.S.C.A. § 1396b(m) (West 2003); in other words, Vista objects to the capitated payment method for newborn infants weighing less than 1,200 grams at birth. In its prayer for relief, Vista sought a judgment declaring that the state agencies' imposition of the risk for this special class of newborns on the Medicaid STAR program was in violation of federal law, or that the state's rates for the Medicaid STAR program were unreasonable and in violation of federal and state law.

Blue and the state agencies responded that Vista expressly assumed the risk for this class of newborns in its contract with Blue. Moreover, by agreeing to a capitated method of payment, Vista expressly agreed to assume the risk that the capitated payment received for an insured member may be insufficient to cover that member's medical needs for any given month. Blue further argued that the capitated payment method is a reasonable method, and Vista cannot now complain about contractual provisions to which it agreed. Vista has accepted the benefits of its subcontract with Blue, and it is bound by the terms of that agreement, according to Blue and the state agencies.

In granting Blue's motion for summary judgment, the trial court essentially agreed with Blue's arguments, concluding that "there is no genuine issue as to any material fact as between HMO Blue and [Vista], and HMO Blue is entitled to judgment as a matter of law both with respect to each and all of [Vista's] claims against HMO Blue that relate to low birth-weight newborns, and with respect to HMO Blue's claim against Vista for breach of contract." Accordingly, the court granted Blue's motion for summary judgment "with respect to each and all of [Vista's] claims

10

relating to low birth-weight newborns." The court later granted the state agencies' plea to the jurisdiction without commenting on its reasoning for the decision.

In arguing that the trial court had jurisdiction to consider its claims against the state agencies, Vista relies on and conflates several theories. To the extent possible, we have attempted to decipher and address these various asserted bases for jurisdiction.

### Jurisdiction Under the APA and the UDJA

Among Vista's claims was a challenge to the validity and application of certain agency rules—40 Tex. Admin. Code §§ 4.1004 and 4.1012—under section 2001.038 of the Administrative Procedure Act ("APA").[9] Section 2001.038 of the APA authorizes declaratory relief for the determination of the validity or applicability of a rule if the plaintiff alleges that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair a legal right or privilege of the plaintiff. Tex. Gov't Code Ann. § 2001.038 (West 2000). We have recognized that section 2001.038 confers jurisdiction permitting judicial review of agency rules. *See Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex., Inc.*, 997 S.W.2d 651,

---

[9] Vista also complains of the state agencies' "failure to follow the APA's notice and comment rule making procedures," referring to "unpublished" rules that "appear only in policy manuals and as directives in the context of the state's contract with HMO Blue." Vista fails to direct this Court to these "unpublished rules." In any event, it is unlikely that these policy manuals and directives in the state's contract can be properly characterized as rules. *See Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003) (definition of rule references statements that affect interest of public at large, not statements made in determining individual rights); Tex. Gov't Code Ann. § 2001.003(6) (West 2000) (defining "rule"). Furthermore, section 2001.035 of the APA sets forth the proper method for challenging a rule based on the agency's failure to follow the procedural requirements prescribed in the APA. Tex. Gov't Code Ann. § 2001.035 (West 2000). Vista's pleadings do not demonstrate that Vista has properly initiated its procedural challenge to these unpublished rules.

655-56 (Tex. App.—Austin 1999, pet. dism'd w.o.j.); *Railroad Comm'n v. ARCO Oil & Gas Co.*, 876 S.W.2d 473, 479 (Tex. App.—Austin 1994, writ denied); *Texas Dep't of Human Servs. v. ARA Living Ctrs. of Tex., Inc.*, 833 S.W.2d 689, 692-93 (Tex. App.—Austin 1992, writ denied); *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 735 S.W.2d 663, 669 (Tex. App.—Austin 1987, no writ). This jurisdiction is an original jurisdiction, not appellate jurisdiction. *Southwestern Bell Tel. Co.*, 735 S.W.2d at 669.

Vista also sought a declaratory judgment under the Uniform Declaratory Judgments Act ("UDJA"). The UDJA grants any litigant whose rights are affected by a statute the opportunity to obtain a declaration of those rights under the statute. Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1997). The purpose of the UDJA is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 1997). The UDJA does not establish subject-matter jurisdiction; an action under the UDJA is merely a procedural device for deciding matters already within a court's subject-matter jurisdiction. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996); *Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 266 (Tex. App.—Austin 2002, no pet.).

Vista asserts jurisdiction under the UDJA based on its claims that the state agencies have (1) exceeded their statutory authority in the manner in which they have applied and interpreted relevant Medicaid statutes and federal regulations, (2) misinterpreted certain statutes, and (3) unconstitutionally impaired Vista's contractual rights. A court will have jurisdiction to hear a UDJA claim to determine whether an agency exceeded its statutory authority, to obtain a declaration of a

12

party's rights under a statute, and to determine whether an agency's action was unconstitutional. *Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 515-16 (Tex. App.—Austin 2003, pet. denied); *Southwestern Bell Tel. Co.*, 735 S.W.2d at 667.

This Court has previously held that it is the duty of trial courts to make the UDJA and section 2001.038 of the APA useful tools in the resolution of legal problems and controversies. *Public Util. Comm'n v. City of Austin*, 728 S.W.2d 907, 910 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *Bellegie v. Texas Bd. of Nurse Exam'rs*, 685 S.W.2d 431, 434 (Tex. App.—Austin 1985, no writ). Regardless of which statutory provision is used, if a declaratory judgment will terminate the uncertainty or controversy giving rise to a lawsuit, the trial court is duty-bound to declare the rights of the parties as to those matters upon which the parties join issue. *Public Util. Comm'n*, 728 S.W.2d at 910. On the other hand, a declaratory judgment is appropriate *only if* (1) a justiciable controversy exists as to the rights and status of the parties, and (2) the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.). To constitute a justiciable controversy, there must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Beadle*, 907 S.W.2d at 467; *Moore*, 985 S.W.2d at 153. The trial court may not grant declaratory relief unless the judgment will *determine* the controversy between the parties; otherwise, the court's judgment will constitute no more than an impermissible advisory opinion. *Martin v. Dosohs I Ltd.*, 2 S.W.3d 350, 353 (Tex. App.—San Antonio 1999, pet. denied); *Southwest Airlines Co. v. Texas High-Speed Rail Auth.*, 863

13

S.W.2d 123, 125 (Tex. App.—Austin 1993, writ denied); *Wilson v. Grievance Comm.*, 565 S.W.2d 361, 362-63 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e.).

Although generally a claim seeking interpretation of an agency's statutory authority is cognizable under the UDJA, in this case, there is no justiciable controversy as to the rights and status of the parties as required by the UDJA. Similarly, although a challenge to the validity of a rule is authorized by the APA, there is no genuine conflict of tangible interests between Vista and the state agencies with regard to these rules. To the extent a dispute exists between the state agencies and Vista, it is only by virtue of Vista's contract with Blue. Although Vista frames its claim in terms of whether the state agencies have misinterpreted federal and state statutes and have thus exceeded their statutory authority, it is clear that these claims arise only in the context of Vista's contractual dispute with Blue. Indeed, Vista's claims against the state agencies were virtually identical and involved the same issues as those alleged against Blue. Moreover, Vista admits that the "proper interpretation of the validity and applicability of these state Medicaid statutes and rules, which are based on federal statutes and rules, is therefore essential to Vista's breach of contract claim against HMO Blue." In sum, the main issue presented to the trial court was whether Vista or Blue is liable under their contract.

The trial court, however, has already evaluated the contract at issue and determined the parties' liability under that contract. Indeed, in denying Vista's motion for summary judgment, the trial court not only rejected Vista's proposed interpretation of the relevant rules, statutes, and the contract, but in granting Blue's motion for summary judgment on all claims regarding "each and all of [Vista's] claims relating to low birth-weight newborns," the court essentially agreed with Blue's

14

interpretation of, and found Vista liable under, the contract and any corresponding statutes and rules. A controversy involving the state agencies' interpretation of certain statutes and rules, therefore, ceased to exist.

It is clear that by continuing to seek declaratory relief against the state agencies after the trial court resolved those same issues when it rendered summary judgment in favor of Blue, Vista was merely attempting to obtain a different judgment in the same controversy—one inconsistent with the summary judgment the trial court had already rendered. In essence, Vista is requesting an advisory opinion, which if favorable, might affect its litigation with Blue. *See Mayhew*, 964 S.W.2d at 928 (courts may not give advisory opinions); *Southwest Airlines*, 863 S.W.2d at 125 (same). The UDJA, however, was not intended to give Vista an opportunity to try the controversy piecemeal. *Cf. Southwest Airlines*, 863 S.W.2d at 126 (holding that where trial court had already decided it had no jurisdiction to review agency's final order, party could not sue for declaratory and injunctive relief in attempt to have court review agency proceeding). This sort of piecemeal litigation is a waste of judicial resources and creates a risk of inconsistent judgments. The trial court thus correctly refused to decide the merits of Vista's declaratory-judgment action and correctly dismissed the suit for want of jurisdiction, as there was no discrete controversy to be remedied by a declaratory judgment; the court was not duty-bound to make any determination. *See Beadle*, 907 S.W.2d at 468 (trial court has discretion to render declaratory judgment so long as it will serve useful, beneficial purpose).

## CONCLUSION

Because a controversy that could be remedied by declaratory relief no longer existed between Vista and the state agencies after the trial court rendered summary judgment in favor of

15

Blue, the trial court properly refused to exercise its jurisdiction.  Accordingly, we affirm the trial court's grant of the state agencies' plea to the jurisdiction.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed

Filed:  May 20, 2004